## 40421. McMICHAEL v. THE STATE.

HILL, Chief Justice.

Eddie McMichael was tried and convicted for the murder of Joe Lewis Jenkins by a jury in Butts County. He appeals.[1]

The defendant and Alberta Gordon Jenkins were married in 1955 and lived together as man and wife until April, 1981. They had one child. After the couple separated and divorce proceedings were begun, it was discovered that because of Alberta's prior undissolved marriage of short duration, no divorce was necessary. Alberta nevertheless maintained the suit in order to settle property questions between them. Meanwhile, the defendant remarried, and Alberta began living with an old high school friend, Joe Lewis Jenkins, the victim.

On Sunday evening, October 3, 1982, the victim, who was driving, and Alberta, who was riding in the back seat, drove the victim's sister to a nearby grocery store, in a 1979 Lincoln, titled in the defendant's name, but involved in the litigation between Alberta and the defendant. While they waited for the sister to shop, the defendant and his wife drove up in his van. Alberta said she looked up to see the defendant point his pistol inside the open window of the Lincoln, say "Now damn it. I told y'all.," and shoot the victim 4 or 5 times in the head, killing him. Another witness also said he heard shots and saw the defendant close to the window of the Lincoln.

The defendant left in his van and drove to the sheriff's office, where he called the sheriff at home. According to the sheriff, the defendant said: "I have just done something I should have done a long time ago. I just shot Joe Lewis Jenkins." The police took him to the city jail, where he made a statement. He said that as he and his wife were getting out of their van, the victim and Alberta drove up in the defendant's car, that when they saw the defendant they began

---

[1] The defendant was found guilty on November 18, 1982. Motion for new trial was timely filed and the transcript was prepared and filed on March 21, 1983. The motion for new trial was amended and heard on June 3 and was overruled on September 2, 1983. Notice of appeal was timely filed and the appeal was submitted for decision by this court on November 25, 1983.

pointing and laughing at him, that he asked them why they kept pestering him, and that the victim took his hands off the steering wheel and leaned over in his seat to the right. At that moment, thinking the victim was getting his gun, the defendant started shooting, he thought about one or two times. Then, the defendant got back in his van and drove to the sheriff's office.

At trial, the defendant testified that the victim had threatened him before and had previously fired shots at him, which he had reported to the sheriff.[2] On the date in question, the defendant said he stepped out of his van, and heard them say: "I'm going to get you. I'm going to get you." He replied: "Why in the hell don't y'all leave me alone?" At which point, the victim said he could do whatever he wanted, and what was the defendant going to do about it, "and I will kill you. . . . I'll blow your brains out." And Alberta kept on saying, "Shoot him." The defendant said the victim then reached and got a gun and shot it at him twice, that he dodged, and took his gun out of the holster on his side and shot the victim in the head two or three times. After that, he drove to the sheriff's office and turned himself in.

No gun was found on the victim or in his car. The defendant also testified that he omitted the fact that the victim had shot at him when he made his statement to the police on the night of the shooting because he wanted to discuss that with an attorney first.[3]

1. The defendant enumerates as error that the trial court abused its discretion in refusing to allow defense counsel, before resting, to recall the defendant to the stand. The defense made an offer of proof that the defendant would have testified, had he been allowed to, that he did not intend to kill the victim. This statement had not been made by the defendant during his testimony.

The state urges that the defendant had been examined, cross-examined, and examined on redirect at length concerning his defense of self-defense, and in response to the questions "So you killed him," had twice answered "I shot him," thereby clearly, the state contends, showing the jury that the defendant's position was that he did not intend to kill the victim.

The defendant has a right, if he chooses to do so, to testify in his own defense. However, the defendant's right to testify does not

---

[2] The sheriff testified that the defendant complained several times to him of harassment by his former wife and the victim, but said that he did not remember the defendant complaining that shots had ever been fired.

[3] The jury was authorized to find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

include the right to filibuster, and hence the trial judge has the power to limit the scope of the defendant's testimony to relevant matters. Here, however, the proffered testimony was certainly relevant.

In addition, the trial court has the power to deny the recall of a witness who testified previously where the testimony to be given by the recalled witness would be repetitious of the witness' earlier testimony. Here, however, the testimony proffered was not entirely repetitious.

There may be occasions where defense counsel desires, as a matter of strategy, to let the defendant be the last defense witness. This strategy may dictate that the defendant omit one statement during his earlier testimony so as to authorize his recall to make one final emphatic statement to the jury. We cannot say that this occurred here because the defense recalled a witness after seeking to recall the defendant. The recalled witness, the sheriff, testified that insofar as he knew no paraffin test was performed on the victim. The preceding witness had described a paraffin test as one used to determine if a person had recently fired a pistol.

Thus, the defendant should have been allowed to return to the stand to testify to the statement offered, and the court erred in not permitting the defendant to do so.

2. The defendant also raises several questions concerning the charge given by the court. One of his complaints is that the trial court erred in charging on mutual combat. OCGA § 16-3-21 (b) (3) (Code Ann. § 26-902). Relying on *Flowers v. State,* 146 Ga. App. 692 (247 SE2d 217) (1978), the defendant argues that his defense at trial was justification and charging mutual combat, when there is no evidence to support it, "effectively cancels the justification defense." As pointed out by the state, however, the error in charging on mutual combat in *Flowers,* supra, occurred because there was no evidence of mutual combat in that case. There was evidence here, given by the defendant, that the victim was armed and shot at the defendant first. There also was evidence of previous difficulties between the two men. The jury would have been authorized to find that the two men decided to resolve their differences by a gunfight. Thus, the charge was authorized by the evidence. *Harris v. State,* 184 Ga. 382 (1) (191 SE 439) (1937).

Enumerations of error 4, 5, 6, and 7, urging error in the refusal to give requested charges, which were otherwise covered by the court's charge, are also without merit. *Shirley v. State,* 245 Ga. 616, 619 (266 SE2d 218) (1980).

3. In enumeration of error 8, the defendant contends that the trial court's charge on malice violated Sandstrom v. Montana, 442

U. S. 510 (99 SC 2450, 61 LE2d 39) (1979), by creating a mandatory presumption. The charge given of which he complains is: "Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof. *Malice shall be implied* where [no] considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." (Matter in brackets added.)[4]

We have held that OCGA § 16-5-1 (b) (Code Ann. § 26-1101), from which this charge comes, is not unconstitutional when given in charge to the jury. *Hosch v. State,* 246 Ga. 417 (5) (271 SE2d 817) (1980); *Franklin v. State,* 245 Ga. 141 (9) (263 SE2d 666) (1980); *Burney v. State,* 244 Ga. 33 (6) (257 SE2d 543) (1979), cert. denied, 100 SC 463 (1979). See also, Hance v. Zant, 696 F2d 940, 953 (11th Cir. 1983).

However, as noted above, the charge given here apparently omitted the word "no" preceding the words "considerable provocation," thereby changing the definition of implied malice. Because this case must be retried, we need not remand this case for a determination of whether the transcript correctly reflects the trial court's instruction to the jury, and we need not decide whether the instruction as it appears in the transcript violates Sandstrom.

4. The defendant next contends that the trial court erred in denying his motion for mistrial after Sheriff Billy Leverette, a witness called by the state, delivered the indictment to the jurors after they had been deliberating for about 2 hours. The jurors had asked for the indictment, which had inadvertently not been sent out to the jury room when deliberations began. Upon inquiry by the court, the sheriff testified that he had merely opened the door, walked in and placed the indictment on the table, that he had said nothing, and no one had spoken to him, and that he had not overheard the jurors deliberating because they were waiting for the indictment.

It is the sworn duty of the bailiff having charge of the jury to permit no one to communicate with them while in the jury room, except by leave of the court. OCGA § 15-12-140 (Code Ann. § 59-717). "The law contemplates that when a jury are selected and sworn to try a citizen for felony, they shall be entirely separated from the world, and that no communication whatever shall be had with them, from

---

[4] See OCGA § 16-5-1 (b) (Code Ann. § 26-1101). The transcript indicates that the word "no" was left out of this charge.

the beginning of the trial until the verdict is rendered, unless by leave of the court. It contemplates that no outside influence shall be brought to bear on the minds of the jury . . . ." *Shaw v. State,* 83 Ga. 92, 100 (9 SE 768) (1889); *Battle v. State,* 234 Ga. 637, 638 (217 SE2d 255) (1975).[5]

The state argues that the sheriff did not communicate with the jury in that nothing was said, and that the sheriff's testimony was not particularly harmful to the defendant.[6] In our view, the presence of the county's chief law enforcement officer in the jury room, bringing in the indictment, itself constitutes a communication.

It is error for a state's witness, particularly the chief law enforcement officer of the county, to enter the jury room while it is occupied by the jurors empaneled to decide the case.[7] The defendant has shown error; the state has not shown such error to be harmless. "The law in this State is, that where misconduct of a juror or of the jury is shown, the presumption is that the defendant has been injured, and the *onus* is upon the State to remove this presumption by proper proof." *Shaw v. State,* supra, 83 Ga. at 98. See *Blount v. State,* 214 Ga. 433 (4) (105 SE2d 304) (1958); see also *Henderson v. State,* 251 Ga. 398, 403 (306 SE2d 645) (1983). As was said in *Monroe v. State,* 5 Ga. 85, 145 (1848): "[O]f one thing we are clear, viz: that no principle or practice tending to insure the impartial administration of justice and the purity of jurors, should in the slightest degree, be abandoned or impaired." The defendant's motion for mistrial should have been granted.

*Judgment reversed. All the Justices concur, except Gregory, J., who concurs in the judgment but dissents as to Division 4, and Marshall, P. J., and Weltner, J., who dissent.*

DECIDED MARCH 15, 1984.

*Alfred D. Fears, William P. Bartles,* for appellant.

---

[5] The state relies upon *Battle v. State,* supra, but it involved a bailiff who had not been a witness in the case.

[6] The record in this case does not show whether the sheriff assisted the prosecutor in selecting the jury. The record does show that the sheriff was the only witness excused from the rule of sequestration, but it does not show whether the sheriff sat at the prosecutor's table during the trial.

[7] Division 5 of *Daniel v. State,* 187 Ga. 411 (1 SE2d 6) (1939), which did not disapprove of the sheriff's entering the jury room to furnish water to the jurors after he had testified in the case, is overruled. We do not decide whether *Smith v. State,* 218 Ga. 216, 222 (126 SE2d 789) (1962), where a doctor who had testified for the state was called to attend a juror who became ill at night, should be overruled.

*E. Byron Smith, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.