## 44457. COHEN v. THE STATE.
(361 SE2d 373)

BELL, Justice.

Michael Anthony Cohen was convicted by a Glynn County jury of malice murder, burglary and possession of a firearm by a convicted felon. He was sentenced to death.[1] He now appeals, raising six enumerations of error. We affirm.

1. Cohen's first four enumerations of error question the sufficiency of the evidence.

a. On the evening of October 14, 1985, the victim, Auzzie Douglas, Sr., visited his son, Auzzie, Jr., who lived nearby. Shortly before 8:00 p.m., Auzzie, Sr. returned home.

His wife, Ruby Douglas, arrived home from work soon afterwards. She observed a young man running away from the front doorway of the house. Entering, she found her husband lying on the living room floor, bleeding from his ear.

Barbara Waters, the victim's stepdaughter, called him at 8:00 p.m. He answered the telephone, and then she heard some noises that sounded like "he was banging a pot on the counter." She "heard him

---

[1] The crime occurred on August 14, 1985, and Cohen was indicted October 23, 1985. The guilt-innocence phase of Cohen's trial lasted from December 1 to December 4, 1986, and the jury returned its guilty verdict on December 4. The sentencing trial took place on December 5, and the jury returned its sentencing verdict that day. Cohen filed a motion for new trial on December 30, 1986, and amended the motion on February 16, 1987. The motion was denied on February 17, 1987, and Cohen filed his notice of appeal on March 6, 1987. The case was docketed in this court on March 17, 1987, and was orally argued on May 13, 1987.

holler and . . . heard something fall." She waited a few moments, thinking perhaps he was playing a trick on her, and then she heard her mother screaming Auzzie's name.

Ruby picked up the phone and told her daughter to come over, that something had happened to Auzzie. Then she called the police.

The victim had been shot in the head — just behind his left ear — and in the chest, and he had a gunshot wound in the web of his left hand.

Police subsequently recovered a pistol that the defendant sold that evening for $10. The gun, which belonged to the victim, was identified by a ballistics examination as the murder weapon.

The defendant's fingerprints were found on a window screen where he had entered the victim's home.

When the defendant was arrested, police found on his person a watch that had belonged to the victim.

After his arrest, the defendant gave several statements to the police. He first claimed that he was somewhere else at the time of the crime and had picked up the watch a few minutes before he was arrested. When he was informed that his fingerprints had been found at the crime scene, he conceded that he "must have been there." He then claimed that, when he entered the victim's house through the window, he saw a man lying on the floor, and that he panicked and ran out the front door, just as someone drove up.

When the police recovered the murder weapon, the defendant changed his story again, stating that he saw the gun lying next to the man on the floor and he stopped just long enough to retrieve the gun before running away. When the police told the defendant they did not believe his story, the defendant stated that he did not mean to kill the victim, and that, if he could get a good deal, he would be glad to tell the entire story.

The defendant gave several other statements, including one in which he claimed to have been standing outside the victim's home when he heard "two or two and a half gunshots." He entered the home looking for something to take, took a watch, and left.

At trial, the defendant testified that he had a serious drug problem and that he needed money for drugs. He entered the victim's home thinking no one was there. He entered the bedroom, and took the watch and the gun. The telephone rang and, to his surprise, someone answered. He turned around, saw the victim standing in the doorway facing him, and he panicked, shot twice, and ran.

b. The evidence overwhelmingly supports the defendant's conviction for burglary, and the jury was authorized to find that the defendant "unlawfully and with malice aforethought" shot the victim as he stood talking on the telephone, facing *away* from the defendant.

The evidence supports the conviction. *Jackson v. Virginia*, 443

U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

c. The jury found two statutory aggravating circumstances supporting the death sentence for the crime of murder: (1) the offense of murder was committed while the offender was engaged in the commission of the burglary, OCGA § 17-10-30 (b) (2), and (2) the defendant committed the offense of murder for the purpose of receiving money or any other thing of monetary value, OCGA § 17-10-30 (b) (4).

The defendant argues that these findings are not supported by the evidence because the evidence clearly shows that the defendant was an "unarmed burglar . . . intent only on finding goods that could be used to sustain his drug habit," who was surprised by the owner of the home, and thereafter "totally abandoned" his "undertaking to burglarize the victim's home" and shot the victim only in attempt to extricate himself from an "unexpected predicament." Hence, the defendant argues, he was no longer engaged in the commission of burglary when he shot the victim, nor did he commit murder for the purpose of receiving money or other things of monetary value.

We cannot agree. Inasmuch as the defendant took a gun and a watch belonging to the victim and shortly thereafter pawned the gun, it cannot be plausibly argued that the defendant abandoned his attempted burglary, for he clearly carried out his original purpose for entering the home, i.e., to commit a theft therein. See OCGA § 16-7-1. Moreover, one does not signal the abandonment of the offense of burglary by the commission of the offense of murder. The jury was authorized to conclude that the defendant committed murder in order to complete the crime of burglary and for the purpose of obtaining two items having monetary value — the victim's watch and gun. See *Horton v. State*, 249 Ga. 871 (11) (295 SE2d 281) (1982).

2. The jury was instructed that if it found one or more statutory aggravating circumstances, then it was to select one of two penalties, penalty (A) being death, and penalty (B) being life imprisonment.

At one point during the court's oral instructions, the court told the jury, "If your recommendation is that the defendant be sentenced to death by electrocution, after having completed number one above, then Mr. Foreman, you would circle either (A) or (B)."

The defendant argues that this "palpable error in the charge . . . throws doubt on the verdict."

This error clearly was a slip of the tongue which could not have misled the jury. See *Gober v. State*, 247 Ga. 652 (278 SE2d 386) (1981). Moreover, any possible mistaken reliance on this erroneous charge could only have benefitted the defendant.

3. The court did not err by refusing to answer the jury's request for a definition of "life imprisonment in terms of years in prison," or by responding that the jury was "bound" by the charge that had been

given and that such was "the law of this state." See *Quick v. State*, 256 Ga. 780 (9) (353 SE2d 497) (1987); *Westbrook v. State*, 256 Ga. 776 (5) (353 SE2d 504) (1987).

### Sentence Review

4. The evidence, as we have held, supports the jury's finding of statutory aggravating circumstances. We do not find that the sentence of death was imposed as the result of passion, prejudice or other arbitrary factor.

It was shown that the defendant had been convicted four times previously of burglary. He had been out of prison for just over a month when he committed the crimes for which he was convicted in this case. The sentence of death is neither excessive nor disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c).

*Judgment affirmed. All the Justices concur.*

### Appendix.

*Beck v. State*, 255 Ga. 483 (340 SE2d 9) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984); *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); *Jones v. State*, 249 Ga. 605 (293 SE2d 708) (1982); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Jones v. State*, 243 Ga. 820 (256 SE2d 907) (1979); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Corn v. State*, 240 Ga. 130 (240 SE2d 694) (1977); *Young v. State*, 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State*, 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State*, 236 Ga. 339 (223 SE2d 703) (1976); *Mitchell v. State*, 234 Ga. 160 (214 SE2d 900) (1975); *Moore v. State*, 233 Ga. 861 (213 SE2d 829) (1975).

### On Motion for Reconsideration.

At the sentencing phase of Cohen's trial the wife and stepdaughter of the victim testified concerning the impact that the death of the victim had on them. On motion for reconsideration Cohen, relying on *Booth v. Maryland*, 482 U. S. ___ (96 LE2d 440, 107 SC 2529) (1987), contends that this testimony was erroneous. Cohen, however, did not object to this testimony at trial and did not enumerate it as error on appeal. Because of this failure to raise the issue in a timely fashion, we decline to address the merits of this argument on reconsideration.

DECIDED OCTOBER 7, 1987 —
RECONSIDERATION DENIED OCTOBER 29, 1987.

*John W. Davis,* for appellant.
*Glenn Thomas, Jr., District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.