44948. MORRIS v. THE STATE.
(364 SE2d 571)

SMITH, Justice.

Dee Morris was found guilty of murdering his mother, Bertha Morris. We reverse.[1]

Sometime after 2:30 a.m. on October 29, 1985, the appellant telephoned for an ambulance saying that his mother had shot herself.

---

[1] Mrs. Morris was found dead on October 29, 1985. The Paulding County jury returned its verdict of guilty on February 26, 1986. A motion for new trial was filed on March 20, 1986, and denied on July 23, 1987. Notice of Appeal was filed on July 31, 1987. The transcript of evidence was filed on June 1, 1987. The record was docketed in this Court on August 31, 1987. The case was argued on October 14, 1987.

When the ambulance arrived, the attendants found the appellant on the phone attempting to call the police as his mother lay on a sofa in the living room with a fatal gunshot wound to her head.

The authorities initially viewed the death of the ailing 81-year-old as a suicide; however, the autopsy, while pointing to five factors which suggested a self-inflicted wound, nonetheless displayed eight other elements which indicated that the fatal wound had been caused by someone else firing the weapon. After attending the autopsy, the authorities asked the appellant to come to the station to give another statement, which he subsequently did without protest. After denying for approximately two hours that he shot his mother, he said, "Well, I know what you want me to say, so I'll tell you what you want to hear." The appellant stated that he had killed his mother, but that he did not know why he had done so.

The jury heard uncontradicted evidence that the appellant's mother had been suffering from various diseases, generally failing health, and depression. Claiming that his mother had killed herself because of her deteriorating condition, the appellant denied killing her. Family members testified also that the appellant was his mother's favorite son and that he had never physically threatened her.

There was a great deal of testimony by Dr. Burton, the medical examiner, regarding the amount of gun powder emitted upon discharge of the weapon. He additionally testified at length about the position of the victim's body and the gun powder residue on it as well as about the location and amount of blood on the gun and the victim's hands. Dr. Burton stated that based on "previous experience with other cases and with this case, it is improbable that she fired the gun, although I cannot rule that out as a remote possibility." He said that he had listed the cause of death as "undetermined" on his report.

During the *Jackson-Denno* hearing, the district attorney called a police officer, J. W. Moore, to testify for the state; his testimony was somewhat different than that of the other officers present during the appellant's interrogation. Because his wife was sick, Moore was excused, subject to recall, if needed. When appellant's counsel stated that he wanted to call the officer for cross-examination before the jury, the district attorney replied, "You definitely may." Later, the district attorney indicated that although Officer Moore was not on his list of witnesses, he had no objection to adding him as one of his witnesses to be called if appellant's counsel did not object. Appellant's counsel responded, "I have no objection to him adding Officer Moore to his list of witnesses and allowing me to cross-examine him before the jury." Thus, it was then agreed that the district attorney would add the officer to his list of witnesses. However, when appellant's

counsel subsequently called Officer Moore to cross-examine him, the district attorney objected, contending that because the appellant had called the officer, he had therefore become the appellant's witness. The court ruled that the appellant could neither cross-examine Officer Moore nor attempt to impeach him. After appellant's counsel had finished questioning the officer, the district attorney, over the appellant's objection, cross-examined him.

Once jury deliberations had begun, the jury and the bailiffs had numerous conversations which the jury foreman initiated by knocking on the door and asking the bailiff questions. On several occasions, the bailiff went to the clerk and repeated those questions to her; she, in turn, repeated them to the judge. The judge then gave his answers to the clerk, who gave them to the bailiff, who ultimately transmitted them to the foreman.

At a post-trial hearing, testimony was given concerning various instances of this procedure. According to testimony, the foreman asked the bailiff at one point, "Could you see if somebody would let us see the towel that's got the blood and the residue all over it?" The bailiff responded, "I don't know, I'll see, but I don't think it was entered as evidence." She asked the clerk if the towel was entered into evidence. Though the bailiff opened the jury room door to report that the clerk had relayed a negative answer from the judge, the clerk, for her part, testified *only* that she had asked the judge questions about the gun and the testimony of Dr. Burton. Hence, the question regarding the towel apparently never reached the trial judge. According to other post-trial testimony, another jury member at a later point asked the bailiff, "Could we have Dr. Burton's transcript and read it?" The bailiff responded, "I don't believe Cathy got it typed up yet. It will be at least a week or two, I believe, before she'll have it typed up." Although the clerk testified that she told the bailiff that the judge had said, "No," the bailiff testified that she, the bailiff, had told the jurors, "Cathy didn't have it typed up." Furthermore, the judge stated that he had instructed the clerk to tell the bailiff to inform the jury that "they have to hear the case from the evidence that was presented, and they couldn't have any further evidence."

1. The evidence was sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to authorize any rational trier of fact to find the appellant guilty as charged.

2. Contrary to the appellant's contention, we do not find evidence of an illegal arrest under the facts of this case. The appellant went voluntarily with the police to the police station as a suspect and was advised of his rights under *Miranda* prior to any questioning. He testified that he had no objection to going to the police station or to talking with the officers. Furthermore, counter to the appellant's assertion, we do not find that the trial court erred in ruling that the

appellant's statements were made voluntarily or in allowing them into evidence.

3. The appellant asserts that he was denied the right to a thorough and sifting cross-examination since, contrary to the district attorney's agreement to permit his cross-examining Officer Moore, he was nevertheless not allowed to cross-examine him. Clearly, the appellant was induced to believe that he could cross-examine Officer Moore before the jury. When the time came, however, not only did the court refuse to permit him to cross-examine Moore or to attempt to impeach him regarding his earlier testimony during the *Jackson-Denno* hearing, but it also allowed the district attorney to cross-examine him. The court ruled that it would decide all questions concerning the appellant's need to cross-examine the officer as each one arose. Additionally, a review of the transcript shows that the appellant was allowed some freedom in his direct and redirect examination despite the original ruling. We hold, however, that it was error for the trial judge first to rule that the defense could cross-examine a witness added to the district attorney's list, and then to rule that the defense could *not* cross-examine that witness. The error was compounded by the court's subsequently permitting the district attorney's cross-examination of the witness.

4. The appellant asserts that the trial court erred in denying his motion for a mistrial due to flawed communications among the jury, bailiff, clerk, and judge. The state, while conceding that the bailiff did indeed have certain communications with the jury, nonetheless maintains that those communications did not prejudice the appellant.

The right to a fair and impartial trial depends on the right of the accused and his counsel to be present when there are communications between the jurors and the trial judge which may materially affect his case. Furthermore, "where a communication from the bailiff to the jury is shown, the burden is on the state to rebut by proof the presumption of harm." *Battle v. State*, 234 Ga. 637, 639 (217 SE2d 255) (1975).

The state claims that the trial court retains the discretion to allow the jury to review evidence presented during the trial, and that all of the conversations in issue only involved the jury's review of evidence. However, the bailiff must not act as an interpreter of juror's questions and the trial judge's answers. Furthermore, the bailiff must not answer questions posed by the jurors based upon her own perception of the questions, or, for that matter, of the law or of the evidence. Any inquiries by the jurors ultimately related to their decision process must be directed to the judge without interpretation by the bailiff or by any other court personnel. Finally, any answers to such questions must be given in open court with the accused and his counsel present.

The transcript makes clear that the jury was struggling with the facts involved in this case. The trial judge in determining whether or not the appellant's statement was voluntarily made indicated that he felt that it was a close question. Considering the cumulative effect of the various errors previously cited, we cannot say that it is highly probable that those errors did not contribute to the jury's verdict. *Johnson v. State*, 238 Ga. 59, 61-62 (230 SE2d 869) (1976).

*Judgment reversed. All the Justices concur, except Weltner, J., who dissents and Hunt, J., who concurs in the judgment only.*

DECIDED FEBRUARY 5, 1988.

*Vinson & Osborne, James R. Osborne*, for appellant.

*William A. Foster III, District Attorney, Blanchette C. Holland, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General*, for appellee.