S99A0431, S99X0449. TURPIN v. TODD; and vice versa.
(519 SE2d 678)

BENHAM, Chief Justice.

William Lamar Todd was convicted of malice murder and armed robbery in connection with the death of Randy Churchwell and was

sentenced to death. His convictions were affirmed by this Court in *Todd v. State*, 261 Ga. 766 (410 SE2d 725) (1991), and the U. S. Supreme Court denied Todd's petition for a writ of certiorari. *Todd v. Georgia*, 506 U. S. 838 (113 SC 117, 121 LE2d 73) (1992). Thereafter, Todd filed a petition for habeas corpus in the Superior Court of Butts County, which court vacated Todd's death sentence after finding that the sentencing phase of Todd's trial had been adversely impacted by two occurrences: an improper bailiff-jury communication which the State had not proven to be harmless; and the failure to have an ex parte hearing on Todd's request at trial for funds for independent psychiatric assistance. The habeas court ordered the trial court to sentence Todd to life imprisonment or hold a new sentencing trial. The Warden filed an appeal in this Court from that ruling, and Todd filed a cross-appeal. We affirmed portions of the habeas court's rulings, reversed some rulings, and remanded the case to the habeas court for reconsideration of several issues in light of our holdings. *Turpin v. Todd*, 268 Ga. 820 (493 SE2d 900) (1997). After conducting another evidentiary hearing and soliciting briefs on the remanded issues, the habeas court issued an order which vacated the death sentence due to the bailiff-jury communication and remanded the case to the sentencing court to impose a life sentence or to conduct a new sentencing trial. The Warden has again appealed (Case No. S99A0431), and Todd has again filed a cross-appeal (Case No. S99X0449).

## *Case No. S99A0431*

In its initial order granting sentencing relief to Todd, the habeas court found that the jury had asked a bailiff about a life sentence and the possibility of parole, that the bailiff had not reported the question to the judge, and that the evidence was "inconclusive" as to any response given by the bailiff to the jury. The habeas court later made reference in its initial order to a "communication" from the bailiff to the jury and an "improper communication" between the jury and the bailiff. In the appeal from that habeas court order, we extrapolated that the only possible improper communication was that of the bailiff informing the jury about Todd's parole eligibility, but asked the habeas court to clarify its findings of fact on whether the bailiff communicated to the jury about Todd's eligibility for parole. Id. at 824. We also determined that Todd's failure to raise on direct appeal the issue of the bailiff-jury communication amounted to a procedural bar preventing litigation of the issue in the habeas court unless Todd could demonstrate sufficient cause for failing to raise the issue earlier, and actual prejudice resulting from the alleged error. Id. We concluded that Todd had shown sufficient cause (id. at 827), but that the

habeas court had applied the incorrect legal standard to determine whether the alleged error actually prejudiced the sentencing phase of his trial. Id. at 830. Consequently, we remanded the case to the habeas court to determine under the appropriate legal standard whether Todd had or could prove actual prejudice (id.) and whether juror affidavits could be used to impeach the sentencing verdict. Id. at 823-824.[1]

On remand, the habeas court clarified its factual findings regarding the bailiff-jury communication. It found that the jury had spent nearly half of their sentencing deliberations discussing the possibility of parole should Todd be sentenced to life imprisonment, and had decided to ask the trial court about parole because the written jury instructions they had did not answer their question. The jury foreman informed a non-uniformed bailiff of the jury's question and wrote the question out at the direction of the bailiff, who left the room with the question. The bailiff returned ten minutes later, gave the written question back to the foreman, and gave the jury a verbal response which he led the jury to believe came from the trial judge.[2] The habeas court found that the bailiff's response was that the jury should refer to the instructions given by the trial judge prior to the commencement of the sentencing deliberations.[3] The jury resumed its deliberations, reached a conclusion that Todd would be paroled in a short period of time (seven to ten years) if sentenced to life and, almost immediately after the communication with the bailiff, returned a verdict of death.

The habeas court found that the bailiff acted improperly by fail-

---

[1] The use of juror affidavits is not an issue in this appeal.

[2] The habeas court found that, despite the jury's belief that the bailiff's response had come from the trial judge, the trial judge had never received the jury's question and that the question was answered by the bailiff without the knowledge or intervention of the trial judge. The habeas court based its finding regarding the lack of the trial judge's participation on several factors: The trial judge did not recall receiving a question from the jury during the sentencing phase; the uniformed bailiffs stationed outside the jury room during deliberations were unaware of a jury question being given the trial judge; and Todd's counsel was never made aware that the jury had a question about the meaning of a life sentence or that the jury had been provided with some form of answer to that question. The habeas court reinforced its finding that the trial court had not been aware of or acted on the jury's question by noting the well-settled law at the time of trial regarding a response to a capital jury's inquiry about parole (*Quick v. State*, 256 Ga. 780 (353 SE2d 497) (1987)); the lack of any evidence on the record that such an inquiry had taken place; and giving the trial judge the benefit of the presumption that she would have acted appropriately had she been made aware of such a question, i.e., she would have put the inquiry on the record, consulted with counsel, formulated a *Quick* response, and personally conveyed that response to the jury in the courtroom.

[3] The habeas court acknowledged that its first order contained an implication that the bailiff actually told the jury that a life sentence meant imprisonment for seven years, but that the evidence, as more fully developed at the post-remand hearing, did not establish that as fact.

ing to take the jury's question to the trial judge and by providing his own answer to the question, which answer encouraged the jury to consider the possibility of parole during its deliberations. In determining that the bailiff's improper conduct had actually prejudiced the sentencing phase of Todd's trial, the habeas court listed six factors which led the court to the finding of actual prejudice: 1) a single vote in favor of a life sentence was sufficient to ensure imposition of that sentence and there was a substantial probability that at least one juror would have voted for life imprisonment had the jury's question been properly transmitted to the trial judge, considered by the court in the presence of Todd and his counsel, and answered according to law; 2) the bailiff's improper action permitted the sentencing jury to base its decision upon an arbitrary factor that is prohibited by Georgia law from being considered in the sentencing phase of a death penalty trial; 3) the bailiff's conduct materially affected the pivotal issue in the jury's sentencing deliberations; 4) a very short period of time elapsed between the bailiff's communication to the jury and the vote to impose the death penalty; 5) the ambiguous and confusing nature of the bailiff's communication confirmed the jury's erroneous misconceptions about parole; and 6) no action (e.g., curative instructions) was taken to ameliorate the prejudice.

The facts as found by the habeas court raise a serious issue regarding the conduct of criminal trials. When the State charges someone with commission of a crime, the accused is entitled to a fair and impartial trial. *Shaw v. State*, 83 Ga. 92 (1) (9 SE 768) (1889). Two safeguards of that right are the accused's right to a jury free of outside influence (*Whitlock v. State*, 230 Ga. 700 (1) (198 SE2d 865) (1973); *Shaw v. State*, supra, 83 Ga. at 100), and the accused's right to be present whenever the trial court takes any action which materially affects the accused's case. *Morris v. State*, 257 Ga. 781 (4) (364 SE2d 571) (1988); *Hopson v. State*, 116 Ga. 90 (2) (42 SE 412) (1902). The first safeguard is implemented by the presence of bailiffs, officers of the court designated as unbiased administrative attendants, whose sworn duty is to take custody of the jury and to "make no communication with them . . . nor permit anyone to communicate with them, except by leave of the court." OCGA § 15-12-140; *McMichael v. State*, 252 Ga. 305 (4) (313 SE2d 693) (1984). The bailiff is the means by which the jury communicates with the trial court, but the bailiff is not permitted to act as an interpreter of the jury's questions and the trial court's answers. *Morris v. State*, supra, 257 Ga. at 784. Under no circumstances may a bailiff answer jury questions related to the jury's decision-making process based on the bailiff's perception of the question, the law, or the evidence. Id. In some instances, a bailiff's improper communication with the jury may infringe upon the accused's right to be present when the trial court

takes action which materially affects the accused's case. Where the bailiff's communication with the jury is, in effect, a supplemental charge, it is a communication which should have been delivered to the jury by the trial judge in open court in the presence of the defendant and defense counsel. See *Morris v. State*, supra, 257 Ga. 781 (4); *Hollis v. State*, 191 Ga. App. 525 (1) (382 SE2d 145) (1989). The very nature of the bailiff's position serves to heighten the prejudicial potential a bailiff's communication may have on the jury. *Cooke v. State*, 230 Ga. App. 326, 328 (496 SE2d 337) (1998).

Factual determinations made by the habeas court are upheld on appeal unless clearly erroneous, i.e., there is no evidence to support them. *Derrer v. Anthony*, 265 Ga. 892 (1) (463 SE2d 690) (1995). See also *Hanson v. Kent*, 263 Ga. 124 (2) (428 SE2d 785) (1993), where we stated that "[t]he 'clearly erroneous' test is the same as the 'any evidence rule.' Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence. to sustain them." Taking into account the evidence presented at the first habeas hearing as well as at the remand hearing, we conclude there was evidence to support the habeas court's factual determinations.

On appeal, the Warden takes issue with the habeas court's finding of the existence of the "actual prejudice" necessary to overcome the procedural bar erected by Todd's failure to raise on direct appeal the issue of the bailiff-jury communication. See *Turpin v. Todd*, supra, 268 Ga. 820 (2). The Warden does not take issue with any of the six factors which compelled the habeas court to determine that the bailiff's misconduct had actually prejudiced the sentencing phase of Todd's trial (see p. 389, supra); instead, the Warden maintains that the habeas court's finding of prejudice is dependent upon a determination that the trial court's response to the jury inquiry about parole would have differed from the response found to have been given the jury by the bailiff, and concludes that such a finding is clearly erroneous in light of an affidavit executed by the trial court eleven days before the remand hearing. In that affidavit, the trial judge stated that, had she been presented with a question from the jury concerning the meaning of a life sentence, she would have told them she could not answer that question and they were to rely on her previously-charged instructions. Since the habeas court found that the bailiff's improper communication consisted of the bailiff telling the jury that they were to refer to the trial court's previously-given instructions, the Warden reasons that Todd was not harmed by the bailiff's communication with the jury.

We disagree with the Warden's reasoning and with his application of a "harmless error" approach to the serious issue presented by improper bailiff-jury communication. The Warden's version of what might have happened had the trial court been made aware of the

jury's inquiry acknowledges neither the right of the defendant and his counsel to be made aware of the jury's question nor the role of trial counsel in the trial court's formulation of a response to a jury inquiry. See, e.g., *Jones v. State*, 259 Ga. 603 (2) (385 SE2d 400) (1989); *Waldon v. State*, 189 Ga. App. 133 (2) (375 SE2d 128) (1988). Furthermore, a finding of harmless error is appropriate where the bailiff merely repeated what the trial court had instructed the bailiff to tell the jury (see *Hollis v. State*, supra, 191 Ga. App. 525 (1)), or where the communication did not materially affect the outcome of the case (see *Logan v. State*, 266 Ga. 566 (2) (468 SE2d 755) (1996)), or was not in the nature of a charge or recharge. See *Hurston v. State*, 206 Ga. App. 570 (2) (426 SE2d 196) (1992). That is not the situation here, where the trial court, never having been informed of the jury's inquiry, did not tell the bailiff what to tell the jury, and the bailiff's response did materially affect the outcome of the case and was in the nature of a charge or recharge. In *Quick v. State*, supra, 256 Ga. 780 (9), a case involving a capital jury's inquiry about the existence of means in the sentencing phase by which the jury could preclude the possibility of the defendant being paroled, this Court held that the trial court's response to such an inquiry is to tell the jury, "in no uncertain terms," that the question of parole is not to be considered. This is so because a capital defendant's parole eligibility is not, and ought not be, an issue for consideration by the jury in the sentencing phase. Id. In the case at bar, the jury was never told that the possibility of parole was not to be a factor in their sentencing deliberations, and there is evidence to support the habeas court's finding that the possibility of parole played a major part in the sentencing phase deliberations. Because the habeas court's finding of actual prejudice is supported by the record, we affirm the decision vacating the death sentence and ordering re-sentencing or a new penalty phase trial.

*Case No. S99X0449*

In its initial order granting relief to Todd on the sentence, the habeas court, using the "pipeline" rule of *Taylor v. State*, 262 Ga. 584, 586 (422 SE2d 430) (1992), retroactively applied *Brooks v. State*, 259 Ga. 562 (385 SE2d 81) (1989), to Todd's case and concluded that Todd was entitled to sentencing relief because he should have had an ex parte hearing before the trial court on his request for funds for independent psychiatric assistance. *Turpin v. Todd*, supra, 268 Ga. at 821. On review, we pointed out that the "pipeline" rule, a method by which a reviewing court determines whether to apply a new rule of criminal procedure retroactively, was applicable to cases on direct review or not yet final, and was not applicable in habeas cases. Id. at 830-831. However, because *Brooks* was decided while Todd's motion

for new trial was pending (six months before Todd's appellate counsel amended Todd's motion for new trial) and appellate counsel had not raised the issue on direct review, we concluded that the habeas court had to determine whether Todd was procedurally barred under OCGA § 9-14-48 (d) from raising the issue in his habeas petition. Accordingly, we remanded the case to the habeas court to apply the cause and prejudice standards, i.e., whether there existed sufficient cause for having failed to raise the issue on direct appeal and whether actual prejudice resulted from the alleged error. Id.

On remand, the habeas court determined the *Brooks* issue was procedurally defaulted because Todd had not satisfactorily proven his reason for not raising the issue on direct appeal, the ineffectiveness of his appellate counsel. While acknowledging that the *Brooks* holding was issued two years before Todd's appeal was decided by this Court, the habeas court determined that appellate counsel was not ineffective for failing to raise the issue because *Taylor*, the case setting forth the "pipeline" rule, was not decided until one year after Todd's direct appeal was decided.

*Brooks* and *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985), "expressly provide that a hearing on a defendant's motion for expert assistance must, *as a matter of due process,* be conducted in secret. . . ." (Emphasis supplied.) *Bright v. State*, 265 Ga. 265 (2) (d) (455 SE2d 37) (1995). While *Brooks* sets out a procedure to ensure that the State may examine the defendant regarding his claim of indigency and that a record of the ex parte proceeding is made, the determination that due process requires that the indigent defendant's application for funds be presented ex parte is not one of criminal procedure. The issue is whether appellate counsel's failure to raise in post-trial proceedings the constitutionality of the trial court's refusal to permit defense counsel to apply for funds for expert assistance ex parte, constitutes ineffective assistance of appellate counsel that would constitute the "sufficient cause" necessary to overcome the procedural bar erected by Todd's failure to have raised the issue on direct appeal. The case is remanded to the habeas court for such a determination. Should the habeas court find appellate counsel was ineffective, the next inquiry will be whether actual prejudice resulted from the error. Should that inquiry also be answered in the affirmative, Todd's claim is not procedurally barred pursuant to OCGA § 9-14-48 (d). *Turpin v. Todd*, supra, 268 Ga. 820 (2).

In Todd's initial cross-appeal from the habeas court's order, we affirmed the habeas court's decision that Todd was precluded from re-litigating the issue of whether *trial* counsel had rendered effective assistance. We based our decision on the fact that this Court had determined in Todd's direct appeal that Todd had not overcome the strong presumption that trial counsel had performed effectively, and

no compelling reason had been presented to authorize relitigation of an issue litigated and decided on direct appeal. *Turpin v. Todd*, supra, 268 Ga. at 831. However, we remanded the case to the habeas court for consideration of Todd's claim that his *appellate* counsel did not render effective assistance of counsel at the motion for new trial and in pursuing Todd's direct appeal. Id. at 831-833. The habeas court was also directed to reconsider, in light of the allegation of ineffective assistance of appellate counsel, those issues the habeas court had found procedurally defaulted because they had not been raised in Todd's direct appeal. Id. at 835.

On remand, the habeas court ruled that Todd's assertion that appellate counsel was ineffective due to his failure to raise aspects of trial counsel's ineffectiveness was not reviewable by the habeas court because it was "merely a circuitous method of relitigating the claim of ineffective trial counsel which was previously ruled on" in Todd's direct appeal. The habeas court went on to hold that, if the claim were not so barred from review, the claim was procedurally defaulted due to the failure to raise the issue on appeal.[4] The habeas court concluded with a blanket ruling that Todd had failed to prove that new trial and appellate counsel was ineffective for failing to raise the allegations and had failed to prove any prejudice resulted therefrom.

Six weeks before the habeas court issued its post-remand order, we set out the standard by which a reviewing court was to measure a habeas petitioner's allegation that appellate counsel was ineffective because appellate counsel failed to raise a nonfrivolous trial error on direct appeal. In *Battles v. Chapman*, 269 Ga. 702 (1) (a) (506 SE2d 838) (1998), we held:

> [W]hen appellate counsel's performance is claimed to be deficient because of a failure to assert an error on appeal, the reviewing court should resolve whether the decision was a reasonable tactical move which any competent attorney in the same situation would have made, by comparing the strength of the errors raised against the significance and obviousness of the alleged error passed over. The presumption of effective assistance of counsel can be overcome only when the ignored issue was so clearly stronger than the errors presented that the tactical decision must be deemed an unreasonable one which only an incompetent attorney would have adopted.

---

[4] As we pointed out in *Turpin v. Todd*, supra, 268 Ga. at 832, the issue of appellate counsel's ineffectiveness could not be procedurally defaulted since Todd was represented at all times during the direct review process by the same attorney, and an attorney may not raise a claim of ineffectiveness against himself.

Since the habeas court's order on remand does not reflect application of this standard, we remand the case to the habeas court for further consideration of the issue of appellate ineffective assistance of counsel.[5]

As to the issues which we concluded on our first review of Todd's habeas action that the habeas court had erroneously determined were procedurally barred because they had been litigated on direct appeal (claim that appellate counsel did not pursue on appeal the State's allegedly discriminatory use of peremptory challenges, unconstitutionality of the Unified Appeal, jury charges, exclusion of Todd from bench conferences) (see *Turpin v. Todd*, supra, 268 Ga. at 834), the habeas court on remand concluded that Todd had offered no evidence of appellate counsel's ineffectiveness concerning the failure to raise the issue of the State's exercise of its peremptory challenges on appeal. This issue must be considered under the *Battles v. Chapman* analysis discussed earlier. We affirm the habeas court's determination regarding Todd's challenge to the unified appeal procedure, the jury charges, and Todd's exclusion from bench conferences that took place during his trial.

*Judgment affirmed in Case No. S99A0431. All the Justices concur, except Hunstein, Carley and Thompson, JJ., who dissent. Judgment affirmed in part and vacated and remanded in part in Case No. S99X0449. All the Justices concur.*

CARLEY, Justice, concurring in part and dissenting in part.

In Case Number S99A0431, I agree with the majority as to the applicable standard of review, but not with its conclusion that there was evidence to support the habeas corpus court's finding of actual prejudice arising from the improper communication between the bailiff and the jury. Accordingly, I dissent to the judgment of affirmance in the direct appeal. In the cross-appeal, Case Number S99X0449, I concur in and write separately with regard to the remand of certain issues to the habeas court.

### Case Number S99A0431

As the majority recognizes, Todd had the burden of proving that the improper communication by the bailiff actually prejudiced the sentencing phase of the trial. Contrary to the implication of the majority, however, the Warden had no burden to show that the bailiff's misconduct was harmless. *Turpin v. Todd*, 268 Ga. 820, 830 (2)

---

[5] We note also that there does not appear to be a ruling from the habeas court on Todd's assertion that appellate counsel did not render effective assistance of counsel at the hearing on the motion for new trial. See *Todd v. Turpin*, supra, 268 Ga. at 832-833.

(b) (493 SE2d 900) (1997). The presumption of prejudice from such misconduct which normally arises on direct appeal does not apply in this habeas case. *Turpin v. Todd*, supra.

In finding actual prejudice, the habeas court relied on a presumption that the trial court would have acted appropriately had it received the jury's question. The majority apparently agrees with the habeas court's conclusion that the trial court's "appropriate" response to the jury's inquiry would have been an instruction that the possibility of parole was not a proper matter for its consideration. *Quick v. State*, 256 Ga. 780, 787 (9) (353 SE2d 497) (1987) (where the instructions "implicitly encouraged such consideration, and in a manner that emphasized the jury's inability to limit or eliminate the possibility of parole"). However, even if the Court is now holding that such an explicit instruction excluding consideration of the issue of parole is the only acceptable response to a jury's question regarding the topic, it most assuredly was not the only proper reply to the jury's question at the time of trial in 1989. Although a 1991 opinion of this Court refers to the instruction suggested in *Quick v. State*, supra, as the "better practice," we unanimously held, both in the 1991 case and in other post-*Quick* decisions, that it is *not* reversible error to decline to answer jury questions about the possibility of parole or to inform the jury that it is bound by the charge already given. *Potts v. State*, 261 Ga. 716, 725 (24) (410 SE2d 89) (1991); *Cohen v. State*, 257 Ga. 544, 546 (3) (361 SE2d 373) (1987); *Childs v. State*, 257 Ga. 243, 256 (20) (357 SE2d 48) (1987).

It is undisputed that the trial judge would have given this acceptable response to the inquiry regarding the possibility of parole during Todd's criminal trial, if she had been informed of the jury's question. She testified by affidavit that she would have informed the jurors that she could not answer the question, but that they were to rely on the previously charged instructions. Such a response is virtually identical to the one which the bailiff actually gave and which the jury believed came from the trial judge. In opposition, Todd has produced no evidence to rebut this showing by the Warden that, in the absence of the bailiff's misconduct, the trial court would have given precisely the same response to the jury's question. In these circumstances, the bailiff's reply to the jury could not possibly meet the test of *actual* prejudice by working to Todd's " 'actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *Turpin v. Todd*, supra at 828 (2) (b). To the contrary, the undisputed evidence demands a finding that Todd suffered no prejudice whatever from the fact that the bailiff, rather than the trial court, responded to the jury's question. In my opinion, therefore, Todd has failed to meet the burden, imposed by the law of the case, of proving that actual prejudice resulted from the bailiff's improper

communication. Accordingly, I believe that the habeas court erred by applying an unauthorized and incorrect legal analysis of the required response to the topic of the jury's parole question and by disregarding the only relevant evidence showing how the trial court would have answered that question. Therefore, I respectfully dissent to the majority's affirmance of the habeas court's order vacating the death sentence.

## Case Number S99X0449

In my opinion, the habeas court's application of erroneous standards and analyses carried over to issues addressed in the cross-appeal. *Brooks v. State*, 259 Ga. 562, 563 (2) (385 SE2d 81) (1989) established the right of a defendant to an ex parte hearing before the trial court on a request for funds for psychiatric assistance. This Court decided *Brooks* after Todd's conviction, but well before his appeal. Nevertheless, appellate counsel failed to raise the *Brooks* issue on Todd's appeal. See *Todd v. State*, 261 Ga. 766 (410 SE2d 725) (1991). In the original habeas proceeding, the habeas court held that Todd could assert his *Brooks* claim retroactively, relying upon the "pipeline" rule of *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992). On appeal, we held that this was error, because *Taylor* and the "pipeline" rule are irrelevant to Todd's entitlement to raise the *Brooks* issue in his habeas proceeding. *Turpin v. Todd*, supra at 830 (3). Where, as here, a defendant could have, but did not, raise an issue in a prior appeal, the proper standard for determining whether there has been a procedural default barring subsequent habeas consideration is the existence of "cause" for that failure and "actual prejudice" suffered by the defendant. *Turpin v. Todd*, supra at 824 (2) (a). Ineffective assistance of counsel constitutes a sufficient "cause" for the failure to raise an issue on appeal. *Turpin v. Todd*, supra at 826 (2) (a). Accordingly, we reversed and remanded for the habeas court to apply this correct standard to Todd's *Brooks* claim. *Turpin v. Todd*, supra at 831 (3). On remand, however, the habeas court concluded that there was not a sufficient showing of "cause" for failing to assert the *Brooks* claim, since *Taylor* was not decided until after Todd's appeal. According to the habeas court, "appellate counsel cannot be held ineffective for failure to raise the *Brooks* issue when the case allowing retroactive application of new procedural rules was yet to be decided." Obviously, this is erroneous, since, as we previously held, *Taylor* has nothing whatever to do with the issue. The crux of the relevant inquiry is Todd's appellate lawyer's failure to raise the *Brooks* issue on appeal, and because *Brooks* was decided before the appeal, counsel could have raised it therein. If Todd's trial lawyer preserved the *Brooks* issue, then appellate counsel may or may not

have been ineffective in failing to raise it on appeal. See generally *Roulain v. Martin*, 266 Ga. 353 (1) (466 SE2d 837) (1996). However, the appellate lawyer clearly would not be ineffective by failing to raise that or any other issue for the *first* time on appeal. *Roulain v. Martin*, supra. Accordingly, resolution of the "cause" prong of Todd's *Brooks* claim depends upon a determination of whether defense counsel properly raised the issue in the trial court and, if so, whether the failure of Todd's appellate attorney to raise it on appeal was ineffective under the standard adopted in *Battles v. Chapman*, 269 Ga. 702, 704 (1) (a) (506 SE2d 838) (1998). Therefore, I believe that the majority correctly vacates the judgment and remands the case for reconsideration of this issue.

Because this Court resolved the issue of the effectiveness of trial counsel on direct appeal, Todd was precluded from relitigating that issue on habeas. *Turpin v. Todd*, supra at 831 (4). However, one of Todd's other habeas claims was the ineffectiveness of his appellate lawyer for failing to raise on appeal certain *additional* alleged instances of the ineffectiveness of his trial attorney. In *Turpin v. Todd*, supra at 831 (5), we remanded for the habeas court to review this claim. On remand, the habeas court initially held that it could not review the claim because it was "merely a circuitous method of relitigating the claim of ineffective trial counsel which was previously ruled on" in Todd's appeal. Clearly, the habeas court erred, since the determinative issue is not the already litigated question of the effectiveness of trial counsel, but the previously unlitigated issue of whether the appellate attorney's handling of the issue of the ineffectiveness of Todd's trial lawyer was itself constitutionally deficient under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The habeas court further concluded that, if the issue of the effectiveness of appellate counsel was not barred because it was previously determined, then it was barred because it was not raised in the context of Todd's appeal. This too is error, because we expressly held in *Turpin v. Todd*, supra at 832 (5) (a) that the issue *cannot* be procedurally defaulted, because "Todd was represented at all times during the direct review process by the same attorney, and that attorney cannot raise a claim of ineffectiveness against himself." Accordingly, I believe that the habeas court must address the issue of the ineffectiveness of appellate counsel on the merits and that, as the majority correctly holds, *Battles v. Chapman*, supra, established the proper standard for making that determination. Therefore, I concur in the vacation and remand with direction that the habeas court apply this standard in its consideration of the merits of Todd's claim of ineffective assistance of appellate counsel.

I also concur in the majority's determination to vacate and remand for application of the *Battles* standard to Todd's claim that

the appellate attorney was ineffective by failing to raise the *Batson* issue on appeal. Since the habeas court correctly determined that Todd's remaining claims are without merit, I concur completely in the majority's affirmance thereof.

I am authorized to state that Justice Hunstein and Justice Thompson join in this opinion.

DECIDED JULY 14, 1999 —
RECONSIDERATION DENIED JULY 30, 1999.

*J. Gray Conger, District Attorney, Chattahoochee Circuit, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige Reese Whitaker, Assistant Attorney General,* for appellant.

*Jeffrey Ertel, Stephen C. Bayliss, Thomas H. Dunn,* for appellee.