## S00A1191. TAYLOR v. THE STATE.
(532 SE2d 669)

HUNSTEIN, Justice.

Toma Wesley Taylor was convicted of malice murder in the shotgun killing of Robert M. Johnson. He appeals from the denial of his motion for new trial.[1] Finding no error, we affirm.

1. The evidence adduced at trial authorized the jury to find that appellant and two friends, King and Lee, were driving around drinking beer, when the victim waved them down. There was evidence that appellant disliked the victim and had previously stated he was going to "mess [the victim] up." A heated verbal argument began between the victim and Lee which ended after appellant fired his shotgun in the air. The four men left the victim's house, with appellant and the victim in appellant's truck followed by King and Lee in King's truck. The men stopped in a secluded spot and a fight between the victim and Lee ended when Lee knocked the victim to the ground. As Lee was walking away, appellant reached into his truck, retrieved his

---

[1] The murder occurred on July 27, 1996. Taylor was indicted March 4, 1997 in Appling County. He was found guilty on January 14, 1998 and was sentenced the same day. His motion for new trial, filed February 12, 1998 and amended August 26, 1999, was denied November 4, 1999. A notice of appeal was filed November 11, 1999. The appeal was docketed April 4, 2000 and was submitted for decision on the briefs.

shotgun, and shot the victim as he struggled to get up. Expert testimony established that the victim died as a result of the shotgun blast fired from a distance between two to fifteen feet. Appellant then drove quickly away but wrecked his truck in a ditch. He and the other two men left in the other vehicle, dropped off Lee, got a chain, and returned with appellant's brother to get the truck out of the ditch. Appellant's brother went to look at the victim, returned to tell appellant that the victim was dead, and urged appellant and King to "do something with" the body. King, who until that time had been unaware appellant had actually shot the victim, refused to help dispose of the body. Instead, after dropping appellant off, King went to his cousin, who is a deputy sheriff, and told him what had happened. Appellant's brother took appellant's shotgun and threw it into a creek; he later showed police where to recover it.

In a statement to police appellant said the shooting was an accident and claimed that when he opened his truck door, the shotgun fell over and fired. A firearms expert, who examined the shotgun and determined it was the murder weapon, testified that he could not make the shotgun fire accidentally.

We find this evidence sufficient to enable a rational trier of fact to find appellant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred by denying his motion for a new trial based on an improper communication between Chief Deputy Sheriff Bill Parker and the jury. The record reflects that at the conclusion of the trial, the court handed the evidence and indictment to the bailiff and the deputy sheriff, who was also a sworn bailiff for the court, and told them in the presence of counsel, and without objection by counsel, to deliver the items to the jury. Appellant saw the deputy sheriff entering the jury room with the evidence and made no objection. It is uncontroverted that the deputy sheriff, in the three minutes he was in the jury room, did not engage any juror in any discussion of the case. It is also uncontroverted that the deputy sheriff was not a witness or otherwise involved in the prosecution of the case.

Appellant contends that the deputy sheriff's presence in the jury room by itself constituted an improper communication. Pretermitting appellant's waiver of this error by failing to object when counsel saw the deputy sheriff entering the jury room, see generally *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996), nothing in *McMichael v. State*, 252 Ga. 305 (4) (313 SE2d 693) (1984), on which appellant relies, supports his position that the presence in the jury room of a law enforcement officer who has not served as a witness for the State constitutes an impermissible communication. We find no merit in this enumeration.

3. OCGA § 17-16-7 provides in pertinent part that

No later than ten days prior to trial or at such time as the court permits, . . . the prosecution or the defendant shall produce for the opposing party any statement of any witness that is in the possession, custody, or control of the state or prosecution or in the possession, custody, or control of the defendant or the defendant's counsel that relates to the subject matter concerning the testimony of the witness that the party in possession, custody, or control of the statement intends to call as a witness at trial.

Appellant contends that the State violated OCGA § 17-16-7 and that the trial court should have granted his motion in limine regarding the testimony of ten witnesses. Six of the ten witnesses did not testify at trial and thus their statements were not subject to OCGA § 17-16-7, which by its terms requires production only of the statements of those witnesses whom "the party in possession, control, or custody of the statement intends to call as a witness at trial or at such post-indictment pretrial evidentiary hearing." As to the remaining witnesses, the prosecution uncontrovertedly produced their statements for defense counsel, who was given the opportunity to review and make notes from the statements.

Appellant, however, contends that reversible error was committed because defense counsel was not allowed to photocopy the witnesses' statements. Unlike other discovery statutes, OCGA § 17-16-7 does not contain the express language requiring the party in possession, control or custody of the discoverable statement to allow the item to be photocopied. Compare OCGA § 17-16-4 (a) (1) (the State shall "make available for inspection, copying, or photographing" any statement by the defendant); id. at (a) (3) (State to permit defense to "copy or photograph" physical evidence); id. at (a) (4) (State to permit defense to "copy or photograph" scientific and medical reports).[2] Nor

---

[2] Likewise, OCGA § 17-16-7 does not require the State to furnish copies of the statements to the defense. *Lawson v. State*, 224 Ga. App. 645 (3) (b) (481 SE2d 856) (1997). Compare OCGA § 17-16-3 (State to furnish defendant with copy of indictment and list of witnesses); OCGA § 17-16-4 (a) (2) (State required to furnish copy of criminal history to defendant). Contrary to appellant's contention, nothing in *Lawson*, supra, stands for the proposition that OCGA § 17-16-7 requires the custodian of a witness statement to allow the statement to be photocopied. That case addressed whether the State was obligated to serve the defendant with copies of discoverable items, including witness statements. The Court of Appeals properly distinguished between statutory language requiring the State to "make available" documents for copying and language requiring the State to "furnish" the defendant with those documents, i.e., serve copies on the defendant. *Lawson*, supra at (3) (a). The Court of Appeals rejected the argument that the production requirement in OCGA § 17-16-7 required the furnishing of copies, noting only that the language in § 17-16-7 was "closer to" the "make available" requirement.

is there any language in OCGA § 17-16-7 comparable to its civil counterpart, OCGA § 9-11-34 (a), which provides that a party "may serve on any other party a request: (1) To produce and permit the party making the request . . . to inspect and copy any designated documents." See OCGA § 9-11-124 (form for motion for production of documents provides for production request and permission to inspect and copy requested documents); see also 27 CJS Discovery § 71 ("[u]nder a statute or rule expressly so providing, the court may order a party to permit the copying or photocopying of the document or thing in issue," id. at 138).

The well-established rules of statutory interpretation require us to presume that the Legislature, when it enacted OCGA § 17-16-7, knew that a mere request to produce a document does not require the document's custodian to allow it to be photocopied and that it deliberately chose to exclude the language, set forth in other discovery provisions enacted together with OCGA § 17-16-7, see Ga. L. 1994, p. 1895, which expressly provides for the copying of documents. E.g., OCGA § 17-16-4 (a) (1), (3) and (4). See generally *Lawson v. State*, 224 Ga. App. 645 (3) (a) (481 SE2d 856) (1997). We recognize that in the context of witness statements in a criminal proceeding, counsel, as a professional courtesy, should allow opposing counsel to copy the statements at a time agreed to by the parties. However, OCGA § 17-16-7 does not require the custodian of a document to allow copying and the refusal to allow a party to photocopy a witness statement thus does not constitute reversible error. Accordingly, we find no error in the trial court's denial of appellant's motion in limine. However, we note that opposing counsel must be allowed use of a witness's statement at trial during cross-examination of that witness in order to facilitate the proper questioning of the witness. See, e.g., OCGA § 24-9-69 (refreshing the memory of a witness); OCGA § 24-9-83 (impeaching a witness with a contradictory statement).

4. We find no error in the trial court's admission of appellant's statement to police. Assuming, arguendo, that the issue was properly raised, the record establishes that appellant's statement was not the result of a constitutionally-invalid warrantless arrest because the deputies, at the time they arrested appellant, possessed knowledge of facts and circumstances based on reasonably trustworthy information which authorized them to believe appellant had committed an offense. See *Bishop v. State*, 268 Ga. 286 (2) (486 SE2d 887) (1997). Prior to seizing appellant, the deputies had located the victim's body and learned from King, an eyewitness, that he had seen appellant fire a shotgun at the victim. This information was sufficient to give the officers a particularized and objective basis for believing appellant murdered Johnson. See id.

5. Appellant contends his right to a thorough and sifting cross-

examination of the witnesses against him was abridged when the trial court sustained the State's objection to a question defense counsel posed to one of the law enforcement officers who arrested appellant regarding the officer's training.[3] Contrary to appellant's contention, this question had no relevancy to the voluntariness of his statement and did not curtail the jury's assessment of the facts surrounding that issue. Accordingly, we find no abuse of the trial court's discretion in limiting the scope of appellant's cross-examination in this instance. See generally *Stevens v. State*, 213 Ga. App. 293 (2) (444 SE2d 840) (1994).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 5, 2000.

*Salter, Shook & Craig, Mitchell M. Shook*, for appellant.
*Stephen D. Kelley, District Attorney, John B. Johnson III, Assistant District Attorney, Thurbert E. Baker, Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.

---

[3] The question to which the State objected was: "In your training have you been told that you can take people and place them under arrest and place them in custody without a warrant for their arrest?"