S89A0071, S89A0229. BROOKS v. THE STATE; and vice versa.
(385 SE2d 81)

CLARKE, Presiding Justice.

William Anthony Brooks was convicted in 1977 of the murder, armed robbery, rape and kidnapping of a young woman. He was sentenced to death. His murder conviction was vacated in *Brooks v. Kemp*, 762 F2d 1383 (11th Cir. 1985), *vacated and remanded*, 478 U. S. 1016 (1986), *reinstated*, 809 F2d 700 (11th Cir.), cert. denied, 107 SC 3240 (1987), because of a harmful burden-shifting jury instruction on malice. In the re-trial for murder the state is again seeking the death penalty. This is an appeal from the trial court's decisions on two pre-trial motions. First, the trial court denied Brooks' motion to enjoin the state from seeking the death penalty in the retrial. Brooks appeals. Next, the trial court decided that Brooks was entitled to an *ex parte* hearing to determine whether he should receive state funds for investigative or expert assistance. The state appeals. We affirm both decisions of the trial court.

1. Brooks contends that double jeopardy bars the state from seeking the death penalty in the retrial. Double jeopardy applies to the sentencing phase of a capital trial if there was insufficient evidence at the original trial to support the aggravating circumstances, or if the jury recommended life imprisonment at the first trial. *Spraggins v. State*, 255 Ga. 195, 197-203 (336 SE2d 227) (1985), cert. denied, 476 U. S. 1120 (1986); *Crawford v. State*, 256 Ga. 57 (344 SE2d 215) (1986), cert. denied, 479 U. S. 989. Neither of these factors is

present in the case at hand. Brooks argues that semantic problems with the form of the jury verdict indicate that the jury rejected the state's theory regarding the aggravating circumstances.[1] We disagree. In this case, as in *Gates v. State*, 244 Ga. 587 (261 SE2d 349) (1979), the words used by the jury did not track the statute verbatim. However, as in *Gates*, the intent of the jury is clear, and the evidence supports the finding of the aggravating circumstances. The verdict returned in this case can in no way be construed as an "acquittal" on the statutory aggravating circumstances. See *Crawford*, supra at 57. Therefore, double jeopardy does not bar the state from seeking to prove those aggravating circumstances in the re-trial.

2. In this division we address the question whether an indigent criminal defendant's application for funds for expert assistance shall be heard outside the presence of the counsel for the state. The state appeals from the trial court's order granting defendant's motion to make *ex parte* applications for funds. The trial court found that if an indigent defendant in justifying his need for expert assistance is compelled to reveal his theory of the case in the presence of the district attorney, he might be denied due process and equal protection vis-à-vis the non-indigent defendant who does not need to apply for public funds for assistance, and he might suffer an abridgement of his constitutional privilege against self-incrimination, his right to counsel, and his right to present a defense. Noting that the hearing on a motion for funds is non-adversarial in nature, the court found that the state has no interest in being present. The state argues that as the representative of the people of Georgia, it has a fundamental interest in being present at any hearing on an application for funds by defendant.

The state points to *Anderson v. State*, 258 Ga. 70 (365 SE2d 421) (1988), and *Mafnas v. State*, 149 Ga. App. 286 (254 SE2d 409) (1979). In each of these cases, no error was found in the trial court's refusal to exclude the district attorney from a hearing on a motion to subpoena witnesses. *Mafnas*, supra, contains the most extensive discussion of the problem. The Court of Appeals based its decision on the district attorney's position as representative of the state with an interest in questioning defendant as to his indigency and as to his showing of necessity and materiality. The authority for this holding was what is now Ga. Constitution of 1983, Art. VI, Sec. VIII, Par. I (d) (which describes the duty of the district attorney to represent the state in all criminal cases) and various statutes dealing with the du-

---

[1] The jury recommended the death penalty stating, "We the jury find the following aggravating circumstances: armed robbery, and rape. . .[and] the offense of murder was outrageously and wantonly vile, horrible and inhuman, in that it involved depravity of mind to the victim."

ties of district attorneys.

The state argues that these authorities *mandate* the presence of the district attorney at a hearing where a criminal defendant makes a threshold showing of entitlement to public funds for the hiring of experts. We do not agree. These cases hold that on review the trial court's refusal to exclude a district attorney was not reversible error.

The United States Supreme Court's decision in *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985), is relied upon by defendant. In *Ake* the Court found that "[w]hen the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent." Id. at 82-83. Defendant asserts that this language mandates an *ex parte* hearing. The state insists that *Ake* does not require that the hearing on the application be *ex parte*, that *Ake* concerns only the application for funds to hire a psychiatric expert, and that the court has refused to expand *Ake* in later decisions.

Defendant argues that since in making the application for funds it is critical that the defendant make a detailed showing of evidence involved, *Thornton v. State*, 255 Ga. 434 (339 SE2d 240) (1986), the presence of the state would force him to reveal his theory of the case to the state. This would, he contends, deprive him of his privilege against self-incrimination, his right to counsel, and his right to present a defense, and would raise due process and equal protection problems. Defendant points out that the *ex parte* language in *Ake v. Oklahoma*, F. R. Crim. P., Rule 17 (b), and 18 USC § 3006 (A) (e) have been interpreted to require that such hearings occur outside the presence of the prosecutor. *United States v. Meriwether*, 486 F2d 498 (5th Cir. 1973), cert. denied, 417 U. S. 948 (1974).

We have found no clear authority, and the parties have shown us none, mandating that hearings on motions for public funds be held *ex parte*. The *Ake* holding does not clearly mandate that the hearing be *ex parte*. Other federal cases upon which defendant relies construe federal statutes providing for *ex parte* hearings and are not binding upon us.

While we have noted that we are bound by neither federal statutes dealing with the indigent defendant's obtaining expert assistance nor the cases construing them, these cases do contain helpful analysis. In *United States v. Meriwether*, supra, the court discussed the 1966 amendment to F. R. Crim. P., Rule 17 (b), which provides that application for subpoenas by defendants unable to pay for them be made to the court *ex parte*. The court disagreed with the prosecutor's contention that *ex parte* means without the participation of the other and held that *ex parte* means outside the presence of the other. Further, the court found that the reason that the hearing must be *ex*

*parte* is not to protect the defendant from the opposition of the prosecutor but to protect the defendant from revealing his theory of the case to the prosecutor. Finally, the court found that to place the indigent defendant in the position of revealing his theory of the case in the presence of the prosecutor in the context of a motion for funds to subpoena witnesses when a non-indigent defendant could avoid similar scrutiny would raise serious equal protection questions. The court noted, moreover, that the amendment to F. R. Crim. P., Rule 17 (b), was intended by Congress to address the equal protection ramifications of the problem.

In *Ake*, supra, the Court reiterated the fundamental principle

> . . . that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake. [Id. at 76.]

Identification of the right which is at stake here is more complicated than acknowledging the right of the indigent defendant to obtain the expert assistance necessary to assist in preparing his defense. While exercising that right, the defendant also has the right to obtain that assistance without losing the opportunity to prepare the defense in secret. Otherwise, the defendant's "fair opportunity to present his defense," acknowledged in *Ake*, will be impaired.

In *Roseboro v. State*, 258 Ga. 39, 41 (365 SE2d 115) (1988), we described the showing an indigent defendant must make when requesting public funds to obtain services of a scientific expert:

> A motion on behalf of an indigent criminal defendant for funds with which to obtain the services of a scientific expert should disclose to the trial court, with a reasonable degree of precision, why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services. Lacking this information, a trial court will find it difficult to assess the need for assistance.

The task before us is to create a procedure for the showing described in *Roseboro* which will protect the legitimate interests of the state and the defendant. In devising a procedure for the application

for funds we must take into account the interest of the state, the interest of the defendant, and the burden and benefit of the procedural safeguards chosen. *Mathews v. Eldridge*, 424 U. S. 319 (96 SC 893, 47 LE2d 18) (1976). It is clear that in making the requisite showing defendant could be placed in a position of revealing his theory of the case. He therefore has a legitimate interest in making that showing *ex parte*. On the other hand, the state may have an interest in examining the defendant concerning his indigency. This examination would not prejudice the defendant by forcing him to reveal his theory of the case in the presence of the district attorney. We find, further, that under ordinary circumstances, the trial court can evaluate the necessity for expert assistance without the benefit of cross-examination of the defendant by the state.

We affirm the trial court's order that an application for funds be presented to the court in chambers. The matter will be heard *ex parte*. The state may submit a brief, which will be considered at the time of the *ex parte* hearing. The *ex parte* proceeding shall be reported and transcribed as part of the record but shall be sealed in the same manner as are those items examined *in camera*. The court in its discretion may reserve issues to be heard at a separate hearing at which the state will be present. The state may always be represented when the defendant is examined as to his indigency.

Going beyond the argument that the hearing need not be *ex parte*, the state contends that defendant is not entitled to public funds. This argument is based on a discussion of the limits of *Ake* and on *Sabel v. State*, 248 Ga. 10 (282 SE2d 61) (1981), cert. denied, 454 U. S. 973. In *Sabel* this court found that where evidence of guilt is overwhelming, scientific evidence is not critical and not subject to independent examination. According to the state, evidence of Brooks' guilt is overwhelming; therefore, he is not entitled to public funds for such examination. *Sabel*, supra, deals with the defendant's right to complain on appeal of the denial of funds for an expert witness for trial. Since the weight of the evidence of defendant's guilt cannot be known before the trial, *Sabel* is not applicable to the present situation.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 2, 1989 —
RECONSIDERATION DENIED NOVEMBER 21, 1989.

*Stephen B. Bright, George H. Kendall III, Gary Parker*, for appellant.

*Douglas C. Pullen, District Attorney, J. Mark Shelnutt, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan*

*V. Boleyn, Senior Assistant Attorney General,* for appellee.