303 Ga. 569
FINAL COPY

S18A0018. PUTNAL v. THE STATE.

Boggs, Justice.

Dustin Drew Putnal has been indicted in Polk County for one count each of malice murder, aggravated battery, and aggravated sexual battery and two counts each of felony murder and cruelty to children in the first degree in connection with the death of Ella Grayce Gail Pointer, a minor, on or about October 28 or 29, 2016. The State is seeking the death penalty. As set forth in more detail below, after the trial court issued an order denying Putnal's motion to proceed ex parte and under seal with regard to his requests for defense-retained mental health experts to gain access to him in the detention center where he is incarcerated, Putnal obtained a certificate of immediate review from the trial court and filed an application for interlocutory appeal in this Court. See OCGA § 5-6-34 (b). This Court granted Putnal's application in an order directing the parties to address: "Whether the trial court erred in denying Putnal's motion to proceed ex parte and under seal with regard to

matters pertaining to his expert mental health investigation." We also directed that, in addressing this question, the parties discuss Zant v. Brantley, 261 Ga. 817, 817, 818-819 (2) (411 SE2d 869) (1992), in which this Court held that the State was not entitled to be present at a hearing concerning the defendant's request for an access order similar to the access orders involved in Putnal's case. For the reasons set forth below, we conclude that the issue presented in this case is controlled by Brantley. We therefore reverse the trial court order from which Putnal appeals, and we remand this case for further proceedings consistent with this opinion.

1.  Because Putnal is indigent, the capital defender division of the Georgia Public Defender Council ("Council") represents him, as provided under the Indigent Defense Act. See OCGA §§ 17-12-1; 17-12-12 (a). That act also requires the State to fund the costs of obtaining expert assistance for indigent capital defendants. See OCGA § 17-12-12.1 (c) (providing that the Council, "with the assistance of the Georgia capital defender division, shall establish guidelines for all expense requests for cases in which the death penalty is sought," including, but not limited to, expert and investigative fees); Phan v. State, 290 Ga. 588, 590 n.6 (723 SE2d 876) (2012) (noting that the Indigent Defense Act requires the State, not the county, to fund death penalty

defense for indigents). Therefore, Putnal has no need to apply to the trial court for county funds for expert assistance. However, Putnal asserts, and the State agrees, that the Polk County sheriff requires a court order for outside parties to be allowed to examine inmates in the Polk County Detention Center, where Putnal is currently incarcerated. Thus, Putnal must obtain an order from the trial court before any mental health experts who have been retained in preparation for his defense are able to have access to him for any purpose, including interviews, evaluations, testing, and examinations. The relevant facts as agreed to by the parties in their briefs and/or demonstrated by the record show that, as a result of Putnal's need to obtain such orders, the following events led to the order from which Putnal appeals.[1]

On two separate occasions, June 23 and 27, 2017, defense counsel filed with the trial court in chambers an ex parte motion requesting that a defense-retained mental health expert be allowed to access Putnal at the detention center in order to examine him.[2] On each occasion, defense counsel also

---

[1] The trial court did not conduct a hearing on Putnal's motion to proceed ex parte and under seal regarding his mental health investigation, and the trial court made no factual findings concerning the events leading up to its order. However, all of the facts that are essential to our decision are supported in the record.

[2] Both of Putnal's motions bear the handwritten notation: "Filed with the Court. Received in Chambers on [the relevant date]." Both are also initialed by the trial court. See OCGA § 17-1-1 (d) (authorizing a judge in a criminal case to permit the filing of pleadings and other papers with

presented the trial court with a proposed ex parte order granting the motion. On June 27, 2017, the trial court signed both orders, each of which provided that the order "shall be considered confidential and shall not be disclosed until such direction from the [c]ourt."

Nevertheless, acting sua sponte and without prior notice to the defense, on Friday, June 30, 2017, at 4:41 p.m., the trial court filed with the superior court clerk a document that it had created entitled "Filing of Motions," which listed the two ex parte motions that Putnal had submitted to the trial court in chambers on June 23 and 27, 2017, respectively. The designations by which these ex parte motions were listed on the trial court's "Filing of Motions" included the names of the defense-retained mental health experts and the fact that those experts were to examine Putnal, yet the trial court did not file this document under seal.[3] At the same time, the trial court also filed with the superior court clerk the actual motions that Putnal had originally filed ex parte with the trial court in chambers and the signed orders granting those motions

---

her or him, in which event the judge "shall note thereon the filing date and transmit them to the office of the clerk"). Putnal did not serve the ex parte motions on the State. See OCGA § 17-1-1 (a) (providing that written motions "as to which a hearing ex parte is authorized" are an exception to the requirement that, in criminal cases, every written motion be served on the opposing party).

[3]     The trial court's "Filing of Motions" also listed two additional pleadings that Putnal had filed with the trial court in chambers on June 23, 2017, which are not at issue in this appeal.

for access to Putnal in the detention center by his two named mental health experts. However, the trial court did not seal those motions or orders. Then the trial court immediately served the State and defense counsel via e-mail with its "Filing of Motions" and attached copies of the motions that Putnal had filed ex parte in chambers on June 23 and 27, which were now also stamped as filed by the clerk on June 30, 2017.

By reply e-mail shortly thereafter, defense counsel objected to the trial court's disclosures. Then, on July 3, 2017, which was the next business day, defense counsel served the State and provided the trial court with its combined motion and brief regarding ex parte communications by the defense, in which defense counsel asked the trial court to seal its document entitled "Filing of Motions," the two defense motions requesting that named mental health experts be granted access to Putnal, and the two orders granting those motions. On July 7, 2017, after receiving a brief from the State disputing that ex parte communications were authorized under the circumstances, the trial court denied Putnal's motion.[4]

---

[4] In his brief to the trial court, Putnal also asked that he be allowed to proceed ex parte and under seal with respect to any future communications with the trial court regarding the defense's mental health investigation, and he now contends that the trial court's order "declared that no future filings related to [his] mental health consultants would be sealed." However, the trial court's order does not explicitly address future filings. Nevertheless, the trial court clearly stated in the

2. Putnal contends that the trial court erred by finding that no persuasive legal authority exists to support his contention that ex parte communications were not only authorized but required under the circumstances in his case, citing Ake v. Oklahoma, 470 U. S. 68 (105 SCt 1087, 84 LE2d 53) (1985), and Brooks v. State, 259 Ga. 562 (385 SE2d 81) (1989).  In Ake, the United States Supreme Court held that the Fourteenth Amendment's due process guarantee of fundamental fairness requires that an indigent defendant be given access to a competent mental health expert upon a showing that his sanity at the time of the offense will be a significant factor at trial.  As this Court has recognized, this right to expert mental health assistance also "applies, when appropriate, to the sentencing phase of capital proceedings."  Bright v. State, 265 Ga. 265, 270 (2) (c) (455 SE2d 37) (1995) (citing Ake, supra, 470 U. S. at 83-84 (III) (B)).  Although the Supreme Court did not incorporate mandatory ex parte procedures into its holding, it did recognize the appropriateness of such procedures in dicta.  See Ake, supra, 470 U. S. at 82 (III) (A).  In Brooks, decided four years after Ake, this Court confronted the issue of whether an

order its determination that the motions and orders at issue did not present "a proper situation" for proceeding ex parte and under seal, and it is reasonable to assume that, unless the trial court is directed otherwise by this Court, it will continue to act in a manner consistent with its order whenever it is presented with similar motions in the future.

indigent criminal defendant is entitled to an ex parte hearing to determine whether he should receive public funds for investigative or expert assistance. Brooks, supra, 259 Ga. at 563 (2). Finding no clear authority on the issue, we conducted our own analysis and found that such a hearing must be conducted ex parte. See id. at 563-566 (2).

Putnal argues that Brooks supports his position that, as an indigent criminal defendant, he has a right to ex parte communications with the trial court on matters that could reveal issues relating to the confidential preparation of his defense, including efforts to obtain orders granting his mental health experts access to him for purposes of examination and evaluation. The State responds, based on various arguments, that Brooks does not apply to the circumstances in Putnal's case. For the reasons that follow, we reject each of the State's arguments in turn.

3. Citing language in Brooks, supra, referring to the specific situation addressed there, i.e., "an indigent criminal defendant's *application for funds* for expert assistance," 259 Ga. at 563 (2) (emphasis supplied), the State first argues that Brooks is inapplicable to Putnal's situation because Putnal does not have to apply to the trial court for funds, given that funds for his expert assistance are being provided by the State through the capital defender division

of the Council.  However, the State's argument fails to recognize the reasoning

behind this Court's decision in <u>Brooks</u>.  There we explained:

> Identification of the right which is at stake here is more complicated than acknowledging the right of the indigent defendant to obtain the expert assistance necessary to assist in preparing his defense.  While exercising that right, *the defendant also has the right to obtain that assistance without losing the opportunity to prepare the defense in secret.*  Otherwise, the defendant's "fair opportunity to present his defense," acknowledged in <u>Ake</u>, [supra, 470 U. S. at 76 (III),] will be impaired.

(Emphasis supplied.)  Id. at 565 (2). Just as "[a] defendant could be placed in

a position of revealing his theory of the case" in order to make the showing

required to support his request for funds for expert assistance,[5] a defendant also

could be placed in that position in making other requests to the trial court

related to utilizing that assistance, such as obtaining an order allowing a

defense-retained expert to access the defendant for purposes of testing and

examination.  Id. at 566 (2).  In either case, <u>Brooks</u> holds that a defendant "has

the right to obtain [expert] assistance without losing the opportunity to prepare

the defense in secret."  Id. at 565 (2).

---

[5]     See <u>Roseboro v. State</u>, 258 Ga. 39, 41 (3) (d) (365 SE2d 115) (1988) (holding that a motion on behalf of an indigent criminal defendant for funds for expert assistance should disclose to the trial court why certain evidence is critical, what type of expert testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs).

This reading of <u>Brooks</u> is supported by another of this Court's decisions that closely followed it. Approximately three years after <u>Brooks</u>, this Court considered an appeal in which a death-sentenced defendant awaiting the hearing on his motion for new trial was, like Putnal, required to obtain an order from the trial court before his mental health experts could have access to him in the facility where he was incarcerated. See <u>Brantley</u>, supra, 261 Ga. at 817. There, the trial court

> issued an ex parte order instructing the warden to allow a named physician to conduct an evaluation of [the defendant] while a member of [the defendant's] counsel team observed, and instructed the warden, [the warden's] staff, and [the wardens'] attorney . . . to refrain from discussing or disclosing the contents of the order to anyone other than the court or [the defendant]'s counsel.

Id. After the warden challenged the trial court's jurisdiction to issue the order, the trial court held a hearing on the matter and excluded the district attorney who was opposing the defendant's motion for new trial. See id. at 818 (2). On appeal, this Court rejected the argument that the exclusion of the district attorney contravened <u>Brooks</u> and held that, on the contrary, "the exclusion was proper" under <u>Brooks</u>, explaining the following:

> In <u>Brooks</u>, we determined that an indigent defendant had a legitimate interest in making an application for funds for investigative or expert assistance ex parte so that an indigent

defendant would not be put in a position of revealing his theory of the case to the prosecution. Where, as here, a defendant files a motion for new trial alleging ineffective assistance of trial counsel on the ground that trial counsel failed to obtain the assistance of necessary experts and failed to obtain competent assistance from those experts who were retained, *it is similarly important that the defendant's theory of his case not be revealed to the prosecution.* Therefore, the prosecution, embodied in the District Attorney, was not entitled to be present at the hearing where the trial court's grant of the defendant's ex parte request [to allow a named physician to conduct an evaluation of him at the facility where he was incarcerated] was at issue.

(Emphasis supplied.) Brantley, supra, 261 Ga. at 818-819 (2). Therefore, this Court in Brantley reaffirmed that the relevant question in determining whether a defendant is entitled to proceed ex parte and under seal is not whether the matter involves an application for funds for expert assistance but whether not proceeding ex parte and under seal could improperly place a defendant in "a position of revealing his theory of the case to the prosecution." Id. at 818 (2). Moreover, particularly significant to Putnal's case is our recognition in Brantley that a defendant's motion seeking access for an expert to evaluate him could improperly place a defendant in such a position and our holding that, under those circumstances, the defendant is entitled to proceed ex parte and under seal.

Nevertheless, the State attempts to distinguish Brantley by arguing that, because Brantley's mental health had already been made an issue at his trial, learning that Brantley was being evaluated by his own expert post-trial would have alerted the State to the defense's motion for new trial strategy. In contrast, the State argues that in Putnal's case it "expect[ed]" the defense to explore Putnal's mental health before trial, and thus no trial strategy was revealed by the trial court's disclosures. The State's argument is not persuasive. The State's "expectation" is not equivalent to discovering the defense or defenses a defendant is actually exploring or to learning details of the defense's investigation.

When pressed at oral argument regarding how Brantley is distinguishable from the facts in this case, the State also argued alternatively that Brantley was wrongly decided to the extent that it held that the State was properly excluded from matters regarding an order that only disclosed the identity of an expert whom the defendant's counsel had retained to examine him. We disagree, as learning the identities of a defendant's experts points the State toward the type of investigation that the defendant is conducting and thus the trial strategy that he is considering. See Britt v. State, 282 Ga. 746, 748 (1) (653 SE2d 713) (2007) (stating that a trial court order forcing the Georgia

Public Defender Standards Council "to reveal the *names* and pay rates of all experts from [recent] indigent capital cases . . . compels the Council to *improperly* expose the strategies being employed by the attorneys in scores of pending capital cases" (emphasis supplied));  United States v. Meriwether, 486 F2d 498, 506 (IV) (5th Cir. 1973) (holding that it was error to allow the prosecutor to be present, in violation of Federal Rule of Criminal Procedure 17 (b), during an indigent defendant's hearing requesting the issuance of subpoenas even though the prosecutor was temporarily excused when the defendant explained to the judge why he wanted a certain witness subpoenaed, because "[t]he *names* of witnesses to be called by the defendant could easily aid the government in determining" the defendant's trial strategy (emphasis supplied)) (cited with approval and discussed for its "helpful analysis" in Brooks, supra, 259 Ga. at 564-565 (2)).

Furthermore, our subsequent case law has continued to support the proposition established in Brooks and further developed in Brantley that a defendant has a legitimate interest in making requests for access to expert assistance ex parte if not doing so would place him "in the position of 'revealing his theory of the case.'"  (Citations omitted.)  Thomason v. State, 268 Ga. 298, 309 (6) (486 SE2d 861) (1997) (citing Brooks, supra, 259 Ga. at

565-566 (2) in recognizing this interest but finding no abuse of discretion where the trial court unsealed the defendant's ex parte motion for funds to challenge the State's DNA testing, which had already been performed, because the defendant's plan to challenge this evidence could not be considered a secretive trial strategy); Bright, supra, 265 Ga. at 272-273 (2) (d) (stating that a defendant has both a right to have his Ake motion decided ex parte *and* to initially prepare a mental health defense in secret). Here, the trial court's disclosures occurred less than three months after the State filed a notice of its intent to seek the death penalty,[6] and the disclosures revealed the identities of the first two mental health experts that defense counsel have retained to examine Putnal. As a result, the State has known since the beginning of the defense's investigation of the case what defense theory and mitigation strategy were being considered and explored.

Accordingly, based upon the foregoing discussion, we conclude that Putnal's case is controlled by Brantley.

4. The State argues that, "even if th[is] Court wants to apply [Brantley] to this case," ex parte communications regarding Putnal's motions and orders

---

[6]   This notice was filed on April 18, 2017.

seeking access to him by his mental health experts were not authorized because Putnal failed to follow the procedures outlined in Brooks, specifically, that a defendant present his motion to the trial court at an ex parte hearing that is reported and transcribed and that the State be given an opportunity to submit a brief to be considered at the time of the ex parte hearing. See Brooks, supra, 259 Ga. at 566 (2). We disagree.

The State's argument here fails to recognize the purpose of the procedures described in Brooks, namely, to "protect the legitimate interests of the state and the defendant." Brooks, supra, 259 Ga. at 565 (2). Because those interests will not always be the same in every situation, the procedures also need not always be the same, as our prior decisions demonstrate. Compare Brantley, supra, 261 Ga. at 818 (2) (rejecting the notion that excluding the State from participating in proceedings involving an incarcerated defendant's request for an order directing that his expert be granted access to him, a matter in which the State had no financial or other legitimate interest, was contrary to Brooks), with Thomason, supra, 268 Ga. at 308-309 (6) (finding no abuse of discretion where the trial court unsealed the defendant's ex parte motion for funds, served the motion on the State, and allowed the State to be present during a portion of the hearing on the motion in order to obtain the State's input

about the reasonableness of the substantial costs involved in the defendant's request). Clearly, the procedures that a trial court should follow in resolving a defendant's motions regarding expert assistance should be flexible and depend upon the circumstances of each case. When viewed in light of the foregoing principles, the State's contentions have no merit.

In particular, regarding the State's claim that it should have been given the opportunity to file a brief on the matter, the purpose of such a procedure is to allow for the State's input regarding matters in which it has an interest, such as the defendant's indigence or the costs of the expert assistance. See Thomason, supra, 268 Ga. at 308-309 (6); Brooks, supra, 259 Ga. at 566 (2). Neither of those matters were at issue in Putnal's case. Moreover, the State has asserted no legitimate interest in any matter related to Putnal's motions for access, and we have not been able to discern any.

As to the lack of a hearing, we agree with other courts who have considered this issue and who have determined that the goals behind affording an ex parte hearing to an indigent defendant requesting expert assistance are met "when an indigent defendant is afforded an opportunity to communicate his request to the trial court in the State's absence." Finch v. State, 715 S2d 906, 909 (I) (Ala. Crim. App. 1997). See Morehart v. Barton, 250 P3d 1139,

1142 (II) (Ariz. 2011) (noting that courts are often able to resolve requests made by ex parte motions without a hearing). It was not an abuse of discretion for the trial court, after being presented with Putnal's ex parte motions requesting that his experts be allowed access to him, to determine that those motions involved a matter that could easily be resolved without the necessity of a hearing and thus to sign the proposed orders in chambers.[7] See Thomason, supra, 268 Ga. at 309 (6) (discussing the trial court's discretion in addressing a defendant's request for expert assistance); Kellar v. State, 226 Ga. 432, 433 (4) (175 SE2d 654) (1970) (stating that the trial court has "wide discretion" in regulating and controlling the court's business, which will not be disturbed on appeal unless its abuse resulted in "wrong or oppression").

The State also claims that the proceedings in which Putnal made his requests for access should have been reported and transcribed in order to create a record for appellate review. However, had the trial court properly sealed

---

[7]  Pointing out that in Brooks, supra, this Court "affirm[ed] the trial court's order that an application for funds be presented to the court in chambers," 259 Ga. at 566 (2), Putnal contends that the trial court's order "forbade any future filings from being delivered to the court in chambers." Putnal is mistaken in that the order from which he appeals did not address this matter. However, in its document entitled "Filing of Motions," the trial court stated: "No further documents are to be delivered to the law clerk or to the Court in chambers for filing." Nevertheless, in that same document the trial court did provide that, "[i]f an Ex Parte conference is needed[,] it may be set by presenting the Court with a Rule Nisi," which would allow Putnal to proceed ex parte and under seal with regard to matters concerning his mental health experts.

Putnal's two motions for access and the orders granting those motions using appropriate sealing orders, the trial court's docket would have reflected those filings, thus creating a sufficient record of the proceedings. On the other hand, if the trial court instead had determined that ex parte proceedings were not authorized when initially presented with Putnal's ex parte motions, it would have been proper for the trial court to issue an ex parte order providing findings of fact and conclusions of law regarding its decision or to conduct an ex parte hearing on the matter, which should have been reported and transcribed as part of the record, with the transcription being properly sealed. See Brooks, supra, 259 Ga. at 566 (2). It also would have been proper for the trial court to seal the motions and the unsigned proposed orders, accompanied by any order regarding its decision not to proceed ex parte and under seal. In its sealing orders, the trial court could have explained that the ex parte motions were not granted and that the motions, unsigned orders, and the trial court's reasons for not proceeding ex parte and under seal were placed in the record under seal for the purpose of creating a record for appellate review. [8] See OCGA §§ 5-6-34

_____

[8] Unfortunately, neither of the scenarios described above occurred in this case, and, as the State concedes, "the disclosure[s in Putnal's case] cannot be undone." For that reason, we conclude that the better practice for a trial court that considers a motion in camera but then decides that ex parte proceedings are not authorized would be for the trial court to inform the defense of its decision by issuing and serving on the defense an ex parte order providing factual findings and

(b) (applications for interlocutory appeal); 17-10-35.1 (interim appellate review in death penalty cases); 17-10-35 (direct appeal in death penalty cases). See also Unified Appeal Procedure (II) (F) (2) (i), (6), (7) (providing that ex parte proceedings must not be disclosed to the State or the Attorney General on an application for interim appellate review).

5. Finally, pointing out that the trial court's disclosures did not reveal the results of any evaluation or whether Putnal plans to proceed with a defense at trial that is based on the examinations to which they refer, the State maintains that Putnal can suffer no harm from the trial court's order. We disagree. The two motions and orders revealed to the State contain the identities of Putnal's experts and their specialized areas of practice within the mental health field, the specific items that the experts intend to bring into the detention center to use to examine and test Putnal, and the defense's generalized bases for seeking to conduct those examinations. The improper disclosure of this information to the State may have given one or more prosecuting attorneys (and perhaps other members of the prosecution team) a glimpse of at least some aspects of the

conclusions of law regarding its decision or by conducting an ex parte hearing in order to explain its decision, in which case the hearing should be reported and transcribed and the transcript should be sealed. The trial court should also seal the entire record regarding the motion, as described above, before filing it in the record.

theories of defense and trial strategies that Putnal and his counsel are exploring, undermining Putnal's legitimate interest in developing his defense theories and trial strategies in secret. The information that the trial court erroneously revealed to the prosecution team cannot simply be extracted from the minds of those with whom it has been improperly shared, and for that reason, a reversal of the unsealing of the ex parte motions and orders may not be sufficient to cure any prejudice that arises from the disclosures. Although it is impossible to know with certainty before trial whether and to precisely what extent Putnal has been prejudiced, it is conceivable that, without additional curative measures, he could turn out to have been prejudiced to an extent that would require any conviction or sentence to be set aside. Cf. Neuman v. State, 297 Ga. 501, 502-510 (2) (773 SE2d 716) (2015) (reversing the defendant's murder conviction where the trial court erred in ordering the disclosure of evidence to the State involving defense experts whom the defendant did not intend to use as witnesses, and where the State used the evidence to undercut the defendant's insanity defense at trial); Childress v. State, 266 Ga. 425, 432-434 (3) (467 SE2d 865) (1996) (reversing the defendant's murder conviction in a death penalty case where the trial court's erroneous order requiring the defense to disclose information regarding all of its experts to the State, regardless of

whether the defense intended to call the experts at trial, chilled the defendant's use of an expert who might have significantly aided the defense at trial). Accord Williams v. State, 958 SW2d 186, 191-195 (Tex. Crim. App. 1997) (holding that the trial court's erroneous denial of the defendant's request to move for expert psychiatric assistance ex parte was not harmless beyond a reasonable doubt as to the sentencing phase and therefore reversing the defendant's death sentence). But see Wellons v. State, 266 Ga. 77, 81-82 (2) (463 SE2d 868) (1995) (holding that any chilling effect on the defendant's ability to consult with experts and to choose a defense strategy due to the trial court's erroneous ruling that the State was entitled to reports of all experts consulted by the defense was harmless in light of overwhelming evidence of guilt that precluded a viable defense of insanity, mental illness, actual innocence, or insufficient evidence); Williams, supra, 958 SW2d at 194-195 (holding that the trial court's erroneous denial of the defendant's request to move for expert psychiatric assistance ex parte was harmless beyond a reasonable doubt as to the guilt/innocence phase, where no legal defense based upon defendant's mental condition was raised and no mental health testimony was presented during that phase of trial).

The following discussion illustrates some of the ways in which Putnal might turn out to have been prejudiced by the disclosures. We do not attempt to ascertain the likelihood of such prejudice, but we remand for the trial court to do so and to consider in light of its assessment of the likelihood of prejudice whether additional curative measures are now in order.

(a) In considering the possible harm to Putnal by the trial court's order, the trial court on remand should first consider the possibility that the defense may not call as witnesses at Putnal's trial the mental health experts revealed to the State. It might be that the defense's intention from the outset was to use these mental health experts only for consultation purposes. See Neuman, supra, 297 Ga. at 505-506 (2) (noting that the defendant's attorneys engaged a psychiatrist and a psychologist as consultants to evaluate the defendant but never intended to call either expert to testify). Or, even if the defense initially contemplated presenting these experts as trial witnesses, the defense could later decide against doing so after hearing the results of their evaluations of Putnal. In either case, Putnal *never* should have been required to reveal the names of these experts to the State, much less any other information about them or their services relating to Putnal. See id. at 504 (2) (holding that the attorney-client privilege applies to confidential communications about matters on which legal

advice is being sought between counsel, their agents, or their client and an expert retained by counsel to aid in representation and that the privilege is not waived if the expert will not testify or provide any basis for other experts' trial testimony); Muhammad v. State, 282 Ga. 247, 249 (2) (647 SE2d 560) (2007) (stating that nothing in the discovery statutes requires a defendant to provide the prosecution with evidence from witnesses whom he or she will not call); Wellons, supra, 266 Ga. at 81 (2) (holding that the trial court erred by ordering the defendant "to disclose before trial the identities and reports of all experts consulted by the defense, whether or not those experts would be called to testify").

Furthermore, even if Putnal does not call either of the disclosed experts as trial witnesses, the trial court's disclosures might still enable the State to draw inferences regarding the defense's investigation as a result of the requirements of the discovery statutes, and those inferences could give the State an advantage at trial. In particular, because Putnal has opted into reciprocal discovery, prior to trial the defense must disclose the names of any experts it intends to call at either phase of the trial. See OCGA §§ 17-16-8 (a) (governing the timing of the defendant's disclosure to the State of information regarding the defendant's intended trial witnesses); 17-16-4 (b) (3) (C) (same

regarding the defendant's sentencing phase witnesses). Accordingly, if the defense does not include in its discovery to the State the names of the two mental health experts that the trial court disclosed, the State may infer that the particular type of testing and examination that those experts were retained to conduct on Putnal did not yield results that would be beneficial to him at trial. Even though the State would not be able to make those inferences until Putnal's witness lists were due to be turned over to the State, this might still be in sufficient time to possibly give the prosecution an unfair advantage during cross-examination of any expert witnesses that the defense does present and perhaps of Putnal, if he testifies.

Moreover, compelling a defendant to disclose information about experts that he does not intend to introduce at trial can force a defendant to decide against consulting an expert for fear that unfavorable evidence could possibly be disclosed to the State, thereby unconstitutionally "chilling" a defendant's investigation. See Childress, supra, 266 Ga. at 433 (3). Accord State v. Barnett, 909 SW2d 423, 429 (Tenn. 1995) (explaining that if ex parte hearings are not required, indigent defendants are, in effect, penalized for requesting psychiatric expert assistance by having to disclose potential witnesses or

potential defenses and, as a result, could be deterred from seeking such assistance).

(b)  Putnal could also suffer harm if he does eventually decide to present these mental health experts to testify at trial.  While in that circumstance he would have a duty as a result of opting into reciprocal discovery to disclose the identities of these mental health experts to the State, that duty would arise only *after* the State had disclosed its witnesses' identities to Putnal.  See OCGA §§ 17-16-8 (a); 17-16-4 (b) (3) (C).  As a result of the trial court's premature disclosures, the State might be more prepared to cross-examine the defense's witnesses than it would have been without the earlier insight into this aspect of Putnal's case, thus giving the State an unfair advantage at trial.  See Williams, supra, 958 SW2d at 195 (finding that the trial court's erroneous failure to allow an indigent defendant to move ex parte for psychiatric assistance was not harmless beyond a reasonable doubt and vacating the defendant's death sentence because, even though information about the expert was discoverable once the expert was called to testify, the earlier disclosure helped the prosecution to better prepare for cross-examination).  If Putnal does rely on the testimony of these experts to support his theory at trial, the State could also

benefit by having been alerted almost from the beginning of Putnal's case that he was considering this specific trial strategy.

(c) Given that the State is seeking the death penalty against Putnal, his right to investigate for mitigating evidence also is pertinent to the analysis. See Wiggins v. Smith, 539 U. S. 510, 522-523 (II) (A) (123 SCt 2527, 156 LE2d 471) (2003) (emphasizing counsel's duty to investigate for mitigating evidence in a death penalty case); Turpin v. Lipham, 270 Ga. 208, 216 (3) (B) (3) (510 SE2d 32) (1998) ("Before selecting a strategy, counsel must investigate the defendant's background for mitigation evidence to use at sentencing."). In that respect, this Court has recognized that a defendant's trial strategy with regard to presenting mitigating evidence in the sentencing phase of a death penalty case may conflict with his guilt/innocence defense theory, "[b]ecause the defendant [in a capital prosecution] stands in a different position with respect to guilt or innocence in each phase [of the trial] and because the separate phases have differing purposes." O'Kelley v. State, 284 Ga. 758, 766-767 (3) (670 SE2d 388) (2008). Thus, a helpful sentencing phase witness might prove to be harmful in the guilt/innocence phase. See id. at 767 (3) (explaining that "it is not uncommon for a convicted defendant who pled not guilty in the guilt/innocence phase of his death penalty trial to present in the sentencing

phase mitigating evidence, such as . . . certain psychological evidence, that would have jeopardized his defense if presented at the guilt/innocence phase"). For that reason, the reciprocal discovery statutes protect a defendant from sacrificing his mitigation theory to protect his guilt/innocence defense by providing that the defense need not produce any substantive discovery to the State regarding its sentencing phase evidence until the announcement or publication of the verdict in the guilt/innocence phase. See Muhammad, supra, 282 Ga. at 249 (2); OCGA § 17-16-4 (b) (3). Therefore, the harm to Putnal as a result of the trial court's order could be greater if the purpose of his retaining the mental health experts is to develop mitigating evidence to present in the sentencing phase of his trial.[9]

(d) If Putnal is eventually tried and convicted, a definitive assessment of prejudice would only be possible after trial. But on remand, the trial court should consider whether additional curative measures are now in order to reduce the risk that these proceedings have been impermissibly tainted by the improper disclosures to the State. In particular, the trial court should weigh

---

[9] In fact, defense counsel indicated in both ex parte motions at issue that one of the purposes for seeking an order to allow the defense-retained mental health experts to assess Putnal in order to evaluate and examine him was "to develop . . . mitigation for the sentencing trial."

the potential harms to Putnal that might arise from those disclosures, discounted by the possibility that the harms might never materialize, against the cost of additional and prophylactic curative measures. The level of detail in the information revealed to the prosecution bears upon the likelihood that any of the conceivable harms to Putnal actually will materialize, and the trial court should hear from the parties about what the prosecution might reasonably have gleaned from the information disclosed to it about Putnal's potential theories of defense and trial strategies. But in doing so, the trial court should take care not to require Putnal to reveal *even more* about his potential defense theories and trial strategies than already has been disclosed to the prosecution. We express no opinion about what additional curative measures, if any, are in order at this point. The trial court, however, should do what it can to ensure that the proceedings in this case from this point forward are not tainted by its improper disclosures of Putnal's ex parte motions and orders to an extent that ultimately would require the setting aside of any conviction or sentence.

6. Based on the foregoing, we conclude that the trial court erred by refusing to allow Putnal to proceed ex parte and under seal regarding his requests for access for his mental health experts to examine him, thereby unfairly placing him in the position of revealing his trial strategy and theory of

the case to the State in contravention of <u>Brooks</u>.  We therefore reverse the trial

court's order and remand for further proceedings consistent with this opinion.[10]

<u>Judgment reversed and case remanded with direction.  All the Justices</u>

<u>concur, except Peterson, J., who concurs in judgment only as to Division 5.</u>

---

[10]    We remind the trial court that, as a superior court, it has the power to draft ex parte orders directing the official in charge of a place of incarceration housing a defendant in a case pending before it to permit evaluations of the defendant by defense-retained experts in a manner that not only protects the identity of the experts for whom access is granted but also prohibits the official in charge and his staff, including jail personnel, from discussing or disclosing this information or any other information contained in the orders to anyone other than the trial court or the defense. See <u>Brantley</u>, supra, 261 Ga. at 817, 818 (1).

Decided May 7, 2018.

Murder. Polk Superior Court. Before Judge Lim.

Gerald P. Word, Crystal H. Bice, for appellant.

Oliver J. Browning, Jr., District Attorney, Jordan L. Stover, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.